**The STATE of Oklahoma, Theresa M. McGehee, District Attorney, Appellee,**

v.

**1983 TOYOTA COROLLA, 1992 LICENSE NO. ZXK–554, VIN # JT2AE86C3EOO48503,**

and

**Janell Marie Akin, Claimant/Appellant.**

No. 81184.

Court of Appeals of Oklahoma, Division No. 2.

March 29, 1994.

Rehearing Denied June 21, 1994.

Order Remanding Case After Settlement July 18, 1994.

Greg Jenkins, Asst. Dist. Atty., Atoka, for appellee.

Stuart W. Southerland, Tulsa, for appellant.

---

1. The lab analysis showed there were 22.3 grams of marijuana and four capsules of methamphet-

*OPINION*

RAPP, Judge.

Claimant Janell Marie Akin appeals the forfeiture of her 1983 Toyota Corolla seized during her arrest for violation of the Controlled Dangerous Substances Act (Act).

## I

Akin and her passenger were stopped by a highway patrol officer near Atoka, Oklahoma, on February 25, 1992, for operating a vehicle with a headlight out. When the officer approached the car, he stated he smelled a strong odor of air freshener. He asked Akin to return to his patrol car and advised her he was going to write her a warning ticket. Once inside the patrol car, the officer radioed a Code 10, a probable drug stop. He wrote the warning ticket and still noticed the smell of air freshener because "[h]er clothes were just saturated with this smell."

After writing the warning ticket, the officer read Akin a Miranda warning and asked for permission to search her car. She resisted. She asked what would happen if she did not consent to a search. The officer told her she would be detained and that he would call a canine unit to conduct a "sniff" search of her car. Upon hearing this, Akin signed the consent form.

The officer searched Akin's car wherein he found a small bag of green leafy substance and two pipes under the passenger's seat. Akin and the passenger were arrested for possession of marijuana and paraphernalia. Upon booking, officers discovered four or five capsules in Akin's purse which, upon testing, turned out to be methamphetamine.[1]

The State filed a Petition to Forfeit Property Seized During Arrest for Controlled Dangerous Substance on March 3, 1992. Akin filed her Notice of Claim and Objection to Forfeiture asserting, among other things: (1) the State erroneously interpreted 63 O.S. 1991 § 2–503(4) in that only vehicles used to transport distributable quantities of controlled dangerous substances are subject to

amine.

forfeiture; and (2) the search of her vehicle was invalid and conducted without a voluntary consent.

Akin subsequently filed a Motion for Summary Judgment asserting her car was exempt under 31 O.S.1991 § 1(A)(13),[2] citing *State ex rel. McCoy v. Lot One (1)*, 831 P.2d 1008 (Okla.Ct.App.1992). The State did not respond. The trial court, by court minute, overruled this motion.

Akin then filed a Motion to Suppress, which was denied, claiming her consent to the search of her car was invalid and, therefore, the fruits of the search were tainted and should be suppressed.

The trial court ordered forfeiture. It entered the following Findings of Fact and Conclusions of Law in Support of Order of Forfeiture: (1) the car was forfeitable pursuant to 63 O.S.1991 § 2–503(4); (2) 31 O.S. 1991 § 1(A)(13) applies to exemptions for payment of debt; and (3) the officer's statement concerning consent was not "sufficiently coercive" to void the voluntary nature of Akin's consent.

Akin appeals asserting: (1) the evidence utilized by the State in support of the trial court's forfeiture order was seized in violation of the United States and Oklahoma Constitutions; and (2) her automobile is exempt from attachment under Oklahoma law.

We address here only the first issue presented.

## II

### A. The Search

The officer's testimony establishes that, upon learning Akin's parked vehicle smelled of "air freshener," he, in his own mind, was convinced that he was involved in a probable drug interdiction stop. This is evidenced by his transmittal of a Code 10 immediately upon return to his patrol unit. The Code 10 occurred prior to writing the defective equipment warning ticket as an apparent result of continuous monitoring of the smell of air freshener in Akin's clothing. As he stated:

I asked the driver to step out of the car and come back to my patrol car and advised her I was going to write her a warning for the headlight. We got back into my patrol car and I wrote her the warning and still, her clothes [*sic*] was just saturated with this smell. So, after I finished with the warning I advised her of her Miranda rights and asked her for consent to search her vehicle.

Further evidence of his mind set is shown by the following exchange, occurring during cross-examination:

Q  Had you called anything in to the station or were—

A  Yes, my headquarters in Durant.

Q  When did you do that?

A  After—when we first walked back to the patrol car.

Q  So the defendant was in the vehicle when you first made radio contact with Durant?

A  Yes.

Q  Do you recall what you said when you made radio contact with Durant?

A  I gave the 10 code for that type of stop.

Q  And what type of stop was that?

2. Title 31 O.S.1991 § 1(A)(13) states in part:
§ 1. **Property exempt from attachment, execution or other forced sale—Bankruptcy proceedings**
   A.  Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

. . . . .

   13.  Such person's interest, not to exceed Three Thousand Dollars ($3,000.00) in value, in one motor vehicle;

While raised as an allegation of error, we do not discuss it in the body of the opinion. Suffice it to say that cursory examination of the allegation reveals it to be without merit for the reason that forfeiture of property, both real and personal, is permitted under circumstances set forth in *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

A  Possible drug interdiction stop.

Q  And that was based on the odor of the air freshener that you have already testified to, is that correct?

A  Yes.

From the above, it becomes apparent: (1) the drug stop decision was based strictly upon the air freshener scent; (2) detention beyond the writing of the warning ticket was unlawful; and (3) Akin was not advised of her arrest even after the reading of her Miranda rights and request to search her vehicle. The consensual search of her vehicle was obtained only after she was informed a drug dog would be contacted and brought to the vehicle and that she would be detained until this was done.[3] She was not informed of her arrest until after the induced search had been made.[4] Her continued detention after the stated reason for the stop and the writing of the warning ticket raises a serious question concerning the legitimacy of the consent and any product of the search.

■■■■ The question of whether a search was voluntary or coerced is a question of fact to be determined from a totality of circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *S.R.L. v. State*, 733 P.2d 885, 886 (Okla.Cr.App.1987). The smell of air freshener, perfume or cologne from the interior of an automobile driven by a female is not, per se, a rationale or reasonable basis for suspicion of drug activity, nor does it establish probable cause, absent further correlating factors, to suspect drug activity. The question of the reasonableness of an officer's actions in an automotive stop in which, after the stop, drugs are found, is examined in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988).

Examining pretextual searches, the court stated that numerous supreme court cases recognize that a pretextual use of police pow-

er raises a problem of constitutional magnitude, and cited *Jones v. United States*, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 1257–58, 2 L.Ed.2d 1514 (1958):

(purpose to search when no probable cause exists makes unconstitutional an otherwise arguably permissible search incident to arrest); *United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932) ("An arrest may not be used as a pretext to search for evidence.").

*Guzman*, 864 F.2d at 1517. The court further stated:

"[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. State of Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *see Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification.").

*Guzman*, 864 F.2d at 1518.

The officer's actions here after Akin's stop were based on the smell of an air freshener scent and are not dissimilar to those of Officer Keene in *Guzman*, about which the court noted:

Furthermore, Officer Keene was unjustified in assuming that a laborer and his wife could not possess $5000 without arousing suspicion *sufficient to justify a seizure*. That Officer Keene's " 'hunch' about [defendants] proved correct is perhaps a tribute to his policeman's intuition, but it is not sufficient to justify, *ex post facto*, a seizure that was not objectively reasonable."

---

3.  This is not dissimilar to *Poe v. Oklahoma City*, 483 P.2d 1190 (Okla.Cr.App.1971), where the defendant was informed after his arrest and removal from his car that, if he did not consent, the car would be impounded, a warrant obtained and the vehicle searched. The court in *Poe* held such consent then obtained to be coerced and involuntary.

4.  Oklahoma does not permit custodial arrest for operating a vehicle with a defective headlight. Title 47 O.S.1991 § 12–101 provides in part:

(a) It is a misdemeanor, punishable by fine of not more than Ten Dollars ($10.00), for any person to drive ... on any highway any vehicle ... which does not contain those parts or is not at all times equipped with such lamps....

[U.S. v.] Smith, 799 F.2d [704] at 708 [11th Cir.1986].

Guzman, 864 F.2d at 1520.

■ Moreover, detention beyond the original purpose of the stop without a reasonable basis is a violation of the Fourth Amendment. As the Guzman court noted:

Although " '[v]ehicle stops for traffic violations occur countless times each day,' [State of Delaware v.] Prouse, 440 U.S. [648] at 659, 99 S.Ct. [1391] at 1399 [59 L.Ed.2d 660 (1979)], [t]here can be no question that the stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment." [7] [Colorado v.] Bannister, 449 U.S. [1] at 4 n. 3, 101 S.Ct. [42] at 43 n. 3 [66 L.Ed.2d 1 (1980)]. ...

---

[7] Although exceptions to normal Fourth Amendment requirements exist for automobiles, " '[t]he 'grave danger' of abuse of discretion does not disappear simply because the automobile is subject to state regulation resulting in numerous instances of police-citizen contact." Prouse, 440 U.S. at 662, 99 S.Ct. at 1400 (citations omitted). "[S]topping an automobile and detaining its occupants constitute a 'seizure' ... even though the purpose of the stop is limited and the resulting detention quite brief." Id. at 653, 99 S.Ct. at 1396; see Almeida–Sanchez v. United States, 413 U.S. 266, 269, 93 S.Ct. 2535, 2537, 37 L.Ed.2d 596 (1973) ("Automobile or no automobile, there must be probable cause for the search."). (Footnote of the Guzman court.)

Guzman, 864 F.2d at 1519. The court continued:

An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. [U.S. v.] Gonzalez, 763 F.2d [1127] at 1130 [10th Cir.1985]; United States v. Recalde, 761 F.2d 1448, 1455 (10th Cir.1985). When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. (Citations omitted.) In order to justify "a temporary detention for questioning," the officer must also have reasonable suspicion "of illegal transactions in drugs or of any other serious crime." [Florida v.] Royer,

460 U.S. [491] at 498–99, 103 S.Ct. [1319] at 1324 [75 L.Ed.2d 229 (1983)]. (Emphasis added.)

Guzman, 864 F.2d at 1519.

■ Thus, it is clear that after the headlight warning ticket had been written, Akin, absent reasonable cause, which was here noticeably absent, should have been allowed to proceed. The Akin search, its fruit and her arrest are similar to those of Poe.[5]

■ The State here urges that the arresting officer's feelings relative to the air freshener smell after the stop and initial contact was "information available to Trooper Nabors and [was] sufficient to establish probable cause to search Mrs. Akin's vehicle." While his feelings may have been the same as those of Officer Keene in Guzman, the Guzman court's response to this line of argument is noteworthy:

The Government objects to any limitation on the exercise of police discretion to utilize minor violations to intrude where probable cause or reasonable suspicion does not otherwise exist, arguing that the police often have no other means of enforcing the law. As Justice Scalia wrote for the Court in response to a similar argument, the officer is limited to "follow[ing] up his suspicions, if possible, by means other than a search.... It may well be that, in [some] circumstances, no effective means short of a search [or seizure] exist[s]. But there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." Arizona v. Hicks, 480 U.S. 321 [329], 107 S.Ct. 1149, 1155, 94 L.Ed.2d 347 (1987).

Guzman, 864 F.2d at 1517.

■ Examination of the totality of all circumstances surrounding Akin's vehicular stop, search, the fruits of the search and her arrest establishes that the consent given by Akin to the search was not voluntary. The trial court then erred in admitting any evidence obtained from this unlawful search in this proceeding.

---

5. See supra note 3.

## B. The Statute

Examination of the forfeiture statute, 63 O.S.1991 § 2–503, particularly in light of the recent case of *Austin v. United States*, ——— U.S. ———, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), establishes the questionability of this statute's use as authority for property forfeiture in matters dealing only with simple possession of marijuana. The statute reads in part:

### § 2–503. Property subject to forfeiture

A. The following shall be subject to forfeiture:

1. All controlled dangerous substances which have been manufactured, distributed, dispensed, acquired, concealed or possessed in violation of the Uniform Controlled Dangerous Substances Act, Section 2–101 et seq. of this title.

. . . .

4. All conveyances, including aircraft, vehicles, vessels, or farm implements which are used to transport, conceal, or cultivate for the purpose of distribution as defined in Section 2–101 of this title, or in any manner to facilitate the transportation or cultivation for the purpose of sale or receipt of property described in paragraphs 1 or 2 of this section *or when such property is unlawfully possessed by an occupant thereof*. . . . (Emphasis added.)

■ Under *Austin*, a forfeiture is an *in rem* proceeding brought against property utilizing a legal fiction that the property is guilty of the crime and is, in essence, a fine. *Id.* at ——–——, 113 S.Ct. at 2806–09. In Justice Scalia's concurrence, he further commented: "[w]e recently stated that, at the time the Eighth Amendment was drafted, the term 'fine' was 'understood to mean a payment to a sovereign as punishment for some offense.'" *Id.* at ———, 113 S.Ct. at 2812. Justice Scalia continued, stating:

[A]n *in rem* forfeiture goes beyond the traditional limits that the Eighth Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense—the building, for example, in which an isolated drug sale happens to occur. Such a confiscation would be an excessive fine. The question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.

*Id.* at ———, 113 S.Ct. at 2815.

■ Akin's vehicle is not the "instrumentality" Justice Scalia speaks of. If the vehicle is not "an instrument of the offense," then there can exist no connection between the vehicle and the offense which is the basis of forfeiture. Then lacking this connection, the vehicle itself may not then be the subject of forfeiture. Or as stated in a case involving the intended forfeiture of a vehicle used to transport untaxed liquor:

It is apparent that the nature of the property here, though termed contraband by Pennsylvania, is quite different. There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss. And it is conceded here that the Commonwealth could not establish an illegal use without using the evidence resulting from the search which is challenged as having been in violation of the Constitution. Furthermore, the return of the automobile to the owner would not subject him to any possible criminal penalties for possession or frustrate any public policy concerning automobiles, as automobiles. This distinction between what has been described as contraband per se and only derivative contraband has indeed been recognized by Pennsylvania itself in its requirement of mandatory forfeiture of illegal liquor, and stills, and only discretionary forfeiture of such things as automobiles illegally used. (Citation omitted.)

*One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965).

Finally, analysis of the Oklahoma statute reveals that it derives directly from the Uniform Controlled Dangerous Substances Act,

which: (1) was approved by the National Conference of Commissioners on Uniform State Laws;[6] and (2) did not provide for forfeiture for simple possession of controlled substances. The Oklahoma Legislature added to the suggested uniform law the language—"or when such property is unlawfully possessed by an occupant thereof."[7] The legislative addition of this language presents an applicational interpretation problem, which the Oklahoma Supreme Court has not yet addressed concerning simple misdemeanor possession of controlled substances, regardless of quantity, without the asserted intent to distribute.

■ Analysis of both the Oklahoma and the Uniform Acts establishes the existence of different penalties dependent upon the type and quantity of the drug involved. The Act's penalty provisions delineate significantly smaller penalties for possession than for distribution. Additionally, penalties are also graduated dependent upon the type of substance involved. It then becomes apparent there is in the Uniform Act and in its Oklahoma adaptation a distinct legislative intent to make a clear distinction between possession and distribution, with distribution treated more harshly and having the more onerous penalties. Additionally, it is clear from the Uniform Act and that enacted by the Oklahoma Legislature that it was not the Oklahoma Legislature's intent to penalize simple possession in the same manner as those charged with distribution. Thus, we here hold that the legislatively added language of the Oklahoma Legislature is in reference to and relates back to the transport, concealment and cultivation of controlled substances for distribution and is intended to be applied only to the penalty portion of matters involving the distribution of controlled substances, while it is not intended to be applied to matters involving only simple possession.

We here hold that the trial court incorrectly interpreted the meaning and intent of the legislatively added language to the Uniform Act regarding simple possession and, in doing so, erred.

### III

■ Accordingly, we hold the patrol officer's search and its product to be tainted by Akin's lack of voluntary consent and that the trial court erred in admitting any unlawfully obtained evidence of the search into the forfeiture proceedings. We also find that the trial court misinterpreted the Legislature's intent concerning the difference in penalties between simple possession and possession with intent to distribute, and in so doing, again erred.

The decision of the trial court is reversed and the matter is remanded with instructions to either restore Akin's motor vehicle to her in operative condition or its value at seizure.

REIF, C.J., concurs.

BOUDREAU, P.J., concurs in result.

### ORDER

REIF, Chief Judge.

The court notes the joint Notice of Settlement filed on July 5, 1994. Neither the Court of Appeals nor the Oklahoma Supreme Court rule on such settlements. Following issue of mandate, this matter is remanded to the trial court for whatever settlement the parties agreed to.

---

6. *See* 9 U.L.A. § 505.

7. 1971 Oklahoma Sessions Laws, ch. 119.