1999 OK CIV APP 136

The STATE of Oklahoma, ex rel. Kay CHRISTIANSEN, District Attorney, Plaintiff/Appellee,

v.

$10,000.00 IN UNITED STATES CURRENCY, Defendant/Appellant.

No. 91,902.

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 30, 1999.

Russ Cochran, Assistant District Attorney, Shawnee, Oklahoma, for plaintiff/appellee.

Redmond P. Kemether, Law Offices, Oklahoma City, Oklahoma, for defendant/appellant.

## OPINION

RAPP, J.

¶1 The trial court Respondent, Mark Salerno ("Salerno"), appeals the trial court's decision in favor of the trial court plaintiff, State of Oklahoma ("State"), which ordered forfeiture of Salerno's $10,000.00.

### I. *Background*

¶2 The parties do not materially dispute the facts. Salerno was stopped by an Oklahoma Highway Patrol trooper in late March 1998 for admittedly speeding on the highway.[1] The trooper stated he detected an aroma of raw marijuana and then obtained Salerno's consent to search Salerno's vehicle.

¶3 The search was conducted in conjunction with the trooper's canine. The dog alerted several times on the vehicle. A search of Salerno produced 1.8 grams of marijuana in a plastic bag which Salerno had in his mouth.

¶4 The trooper observed a black duffel bag in the vehicle and opened a compartment. There he found a clear plastic wrap containing money. The trooper saw some green, leafy material he believed to be marijuana underneath the money. When he opened the money wrapper and shook the money, some additional material believed to be marijuana was found.

¶5 Subsequent laboratory tests, admitted at trial, confirmed the substances to be marijuana. The amount of leafy material found beneath the money was not specified and the report stated that the amount of material found with the money amounted to one hundredth of a gram.

¶6 The money totaled $10,000.00. Salerno, at the scene of the stop, gave inconsistent stories about the source of the money. He told the trooper that the money was from savings. Later he said the money was from sale of a business. Salerno was unable to supply details about the money sources or document his story to the trooper.

¶7 The trooper testified that he confiscated the money because of the way it was packaged, there were drugs mingled with the money and near the money, and of the inconsistent stories given by Salerno. Salerno had other money which he claimed to be wages and that money was returned to him.

¶8 At trial, Salerno generally conceded that the events transpired as related by the trooper. He acknowledged that he gave an inconsistent statement about the source of the money but maintained that, in general, his stories were true. He testified that he was moving from California to upstate New York and had started with $14,000.00. Some of the money was spent for a rental truck, hotels, and meals during his trip. The money constituted receipts from the sale of a vehicle, proceeds from liquidation of an IRA account, proceeds from cash advances on a credit card, and proceeds from sale of a business.

¶9 He presented trial exhibits in support of his claim. The first appears to be a portion of a bankruptcy proceeding document showing that he had received $7,000.00 from a sale of a vehicle. The second was a bank book showing a $2,000.00 deposit and he testified he withdrew that balance in March 1998, but the withdrawal documentation was not offered. His final document was a credit card statement showing a cash advance balance of $10,946.27. His testimony was that the business which was sold had belonged to a girl friend and that she had given him $14,000.00 from that sale.

¶10 According to Salerno, the money that was subject to the forfeiture action was the money remaining after expenditures, the bulk of which were made in connection with his move from California. He expressly denied that the money was in any manner associated with drugs or illegal activity associated with drugs.

¶11 The forfeiture case was tried to the court without a jury.[2] The trial court ordered forfeiture and Salerno appeals.

---

1. Salerno stated he was the party who called looking for his friend driving his rental truck containing Salerno's household goods because they had somehow become separated.

2. Both the State and Salerno waived trial by jury.

¶ 12 On appeal, Salerno argues that the statute does not authorize forfeiture for mere possession of marijuana in the relative small amounts here involved and that the search was illegal.

## II. *Standard of Review*

¶ 13 In a civil action tried before the bench, the trial court's judgment, absent pure error of law, will not be disturbed on appeal if there is any competent evidence reasonably tending to support the trial court's conclusion. *State v. $11,566.00,* 1996 OK CIV APP 67, 919 P.2d 34. Where there is competent evidence to support a trial court's finding of fact, the appellate court cannot alter that finding, nor substitute its judgment for that of the trial court. *Id.*

¶ 14 The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100, Fn. 1. If an appeal asserts a violation of constitutional rights, the appellate court will exercise its own independent judgment, if it becomes necessary to determine the constitutional question. *Ranola Oil Co. v. Corporation Commission of Oklahoma,* 1988 OK 28, ¶ 7, 752 P.2d 1116; Appellate courts can always independently examine the constitutional issues as in a given set of facts. *See Barks v. Young,* 1977 OK 81, 564 P.2d 228. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## III. *Analysis and Review*

### A. *Application of Statute to Mere Possession*

¶ 15 The decisions of *State of Oklahoma v. 1985 GMC Pickup,* 1995 OK 75, 898 P.2d 1280 and *State v. 1983 Toyota Corolla,* 1994 OK CIV APP 51, 879 P.2d 830 hold that the statute, as then written, did not authorize

forfeiture of *vehicles* for simple possession of a controlled dangerous substance. Salerno wishes to extend those rulings to forfeitures of money.

¶ 16 Here the forfeiture was ordered under the authority of 63 O.S.Supp.1997, § 2–503(A)(6). The statute provides:

A. The following shall be subject to forfeiture:

. . . .

6. All things of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of the Uniform Controlled Dangerous Substances Act, all proceeds traceable to such an exchange, and all monies, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of the Uniform Controlled Dangerous Substances Act.

The State has the burden to prove by a preponderance of the evidence that a forfeiture should occur. 63 O.S.Supp.1997, § 2–506(F).

¶ 17 Subsection 6 makes substantially different provisions for forfeiture than Subsection 4 involving vehicles. *See State v. $407.00,* 1995 OK CIV APP 39, 893 P.2d 1017, Fn. 1. In the statute's Subsection 4, the element of possession was deemed related to possession that was associated with sale or distribution of the controlled substances. *State of Oklahoma v. 1985 GMC Pickup,* 1995 OK 75, 898 P.2d 1280. Subsection 6, however, forfeits money "used, or intended to be used, to facilitate any violation" of the Act.

¶ 18 Here, the State did not rely upon mere possession, but rather alleged that the money was either proceeds or money used to facilitate a violation of the Act. The trial court, after hearing the evidence, ruled that the money was in fact seized "as money involved in the facilitation of drug transactions," a violation of the Act, and ordered a forfeiture.

¶ 19 Salerno does not here challenge the sufficiency of the evidence to support the trial court's conclusion and thus the conclusion is final.[3] This makes the premise for

---

3. Salerno did not challenge in the trial court or

here whether the State met its preponderence of

the civil forfeiture aspect of the case different from possession. Consequently, this Court rejects Salerno's· contention that the decisions denying forfeiture of *vehicles* for simple possession apply here.

### B. *Legality of the Search*

¶ 20 The question of whether a search was voluntary or coerced is a question of fact to be determined from a totality of circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *State v. 1983 Toyota Corolla,* 1994 OK CIV APP 51, 879 P.2d 830.

¶ 21 The circumstances and sequence of events are not disputed. Salerno admitted that he was speeding. He did not refute the fact that the trooper detected an odor of ˙raw marijuana. Salerno gave consent to the search. Under all of the circumstances, it cannot be said that the search was illegal. *Compare State v. 1983 Toyota Corol-*

---

*la,* 1994 OK CIV APP 51, 879 P.2d 830. Moreover, the record does not reflect that Salerno sought to suppress the evidence before the trial court. Therefore, this argument is without merit.

¶ 22 In summary, the trial court's decision to order forfeiture is neither contrary to law nor unsupported by competent evidence and is AFFIRMED.

¶ 23 AFFIRMED.

GOODMAN, V.C.J., and STUBBLEFIELD, J. (sitting by designation), concur.

---

evidence burden in the forfeiture of private property. This Court does not address the issue of whether the preponderance of the evidence stan-

dard passes constitutional muster when used as the evidentiary standard to justify forfeiture of private property.