2001 OK CIV APP 135

**STATE of Oklahoma, ex rel., Drew EDMONDSON, Attorney General, Petitioner/Appellant,**

v.

**TWO HUNDRED THOUSAND FOUR HUNDRED NINETY AND NO/100THS DOLLARS ($200,490.00) IN U.S. CURRENCY, Respondent/Appellee,**

and

**Maria Azucena Pena, individually and as administratrix of the Estate of Melchor Pena, Deceased, Claimant/Appellee.**

No. 94,913.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 10, 2001.

Certiorari Denied Oct. 8, 2001.

---

Bob Macy, District Attorney, Marny Hill, Assistant District Attorney, Oklahoma City, OK, for Appellant.

Charles C. Yon, Brant M. Elmore, Oklahoma City, OK, for Appellee.

HANSEN, Chief Judge.

¶1 In this action for forfeiture pursuant to the Uniform Controlled Dangerous Substances Act (the Act), 63 O.S. Supp.1997 §§ 2–101 et seq., Appellant, the State of Oklahoma (State), appeals from summary judgment in favor of Appellee, Maria Azucena Pena (Claimant).

¶2 Claimant and her husband, Melchor Pena, who died during pendency of this action, were arrested after their car was stopped on February 23, 1997, in Oklahoma City. The arresting officer stated the stop was for speeding, improper lane change and following too closely. Melchor Pena, who

was driving, had no driver license, but only a receipt for an out of state traffic violation.

¶ 3 After being unable to verify Claimant's ownership of the vehicle, the arresting officer asked Melchor Pena some questions and received what he said were inconsistent answers. After Melchor Pena consented to a search of the car, the officer found the contested money under the rear seat. No other items were seized from the car. Trace quantities of cocaine on the money were found by chemical analysis.

¶ 4 According to the arresting officer, Claimant and Melchor Pena denied knowledge of, or ownership of, the money. They both signed documents entitled *Voluntary Disclaimer of Interest and Ownership* in regard to the seized money. The disclaimer form also contained a provision waiving notice of and the right to plead in a forfeiture action.

¶ 5 On March 25, 1997, State filed a *Notice of Seizure and Intended Forfeiture* of the money, giving notice to Claimant and Melchor Pena by naming them as interested parties. Criminal charges were also filed alleging they transported proceeds known to be derived from violation of the Act. The notice of intended forfeiture alleged the seized currency was forfeitable pursuant to 63 O.S. Supp.1997 § 2–503 (A) and(B), which is part of the Act. More particularly, in language derived from § 2–503, the notice alleged the currency:

> ... was on or about the 23rd day of February, 1997, furnished or intended to be furnished in exchange for controlled dangerous substances, cocaine, or was proceeds from such exchange. Said Currency was found in close proximity to a controlled dangerous substance, to wit: cocaine. Further said Currency was acquired during the period of a violation of [the Act] or within a reasonable time after such period and there is no likely source for such Currency other than the violation of [the Act].

¶ 6 The Penas filed an Answer to State's notice. They denied the specific allegations in State's notice, including denial of a voluntary disclaimer. Melchor Pena initially filed a Motion for Summary Judgment, but after his death on October 7, 1998, Claimant, individually and as special administratrix, was substituted as claimant and filed a second Motion for Summary Judgment.

¶ 7 In the brief supporting Claimant's motion, she asserted several substantive grounds for judgment and also argued State was precluded from forfeiture by the doctrine of conclusiveness of judgment or collateral estoppel. The basis for this latter argument by Claimant was that criminal charges brought on the same facts had, upon Claimant's motion, been dismissed on August 18, 1998. Claimant reiterated these arguments in an amended motion for summary judgment filed in April 1999.

¶ 8 State filed its own motion for summary judgment. State asserted the search and seizure of the currency was constitutionally permissible and that Claimant had abandoned the money when she signed the disclaimer. State further asserted it was not estopped from proceeding with the forfeiture because the criminal action against Claimant was dismissed construing different language. State reiterated its abandonment assertion in its April 1999 response to Claimant's amended motion, and argued collateral estoppel was inapplicable because there was no identity of parties. That is, State argued the currency was the *in rem* party here, not Claimant.

¶ 9 In April 2000, Claimant filed a *Motion in Limine/Motion to Suppress* the evidence based upon illegal arrest, search, and seizure. She argued her arrest, the search, and seizure of the money were constitutionally impermissible because in dismissing the criminal action the court had held no crime had been committed. She asked the trial court to order suppression of any evidence obtained from her arrest and the search of her vehicle or person.

¶ 10 The trial court found identity of parties and facts with the criminal case, and based upon the motion to suppress being granted there, granted Claimant's motion to suppress here. The trial court found Claimant had been illegally arrested, and ordered exclusion of all evidence subsequent to the arrest "pursuant to the exclusionary rule

and/or the fruit of the poisonous tree doctrine."

¶ 11 The trial court entered summary judgment in favor of Claimant in June 2000. The court specifically found collateral estoppel applied, with the concomitant finding of no violation, or intended violation, of the Act. The court made further specific findings consistent with the statutory language of each alleged violation of § 2–503. The trial court ordered the seized currency released to Claimant's attorney. State brings its appeal from this judgment of the trial court.

¶ 12 State alleges the trial court erred in granting judgment in favor of Claimant because [1] Claimant had no standing to claim the seized currency because both she and Melchor Pena executed disclaimers of interest and ownership, [2] collateral estoppel was erroneously applied, and [3] summary judgment was inappropriate in view of substantial controversy regarding material facts.

¶ 13 Because of State's specific assertions, we find it more appropriate to consider the issue of collateral estoppel first. While the rule of *res judicata* bars relitigation of the same cause between the same parties, the principle of collateral estoppel operates with respect to a different cause of action, where issues raised in the latter action were actually litigated in the former. *Hildebrand v. Gray*, 1993 OK CIV APP 182, 866 P.2d 447. In *Hildebrand*, the Court of Civil Appeals, quoted the following rule from *Schneider v. Republic Supply Co.*, 1926 OK 889, 123 Okla. 98, 252 P. 45:

> For a judgment to be an estoppel, there must be an identity of parties, as well as of subject matter; and the parties between whom the judgment is claimed to be an estoppel must have been parties to the action in which it was rendered in the same capacities and in the same antagonistic relation, or in privity with the parties in such former action.

¶ 14 We find the elements set forth in *Schneider* satisfied. We are unpersuaded by State's assertion there is no identity of parties because the property to be forfeited is the fictional defendant here. Forfeiture has been described as an *in rem* proceeding brought against property by utilizing a legal fiction that the property is guilty of a crime. *State v. 1983 Toyota Corolla*, 1994 OK CIV APP 51, 879 P.2d 830. However, this type of proceeding does not preclude Claimant's standing as a party to the action.

¶ 15 Section 2–506 of the Act, which provides the procedure for the forfeiture proceeding, requires owners and other parties in interest to be given notice of the proceeding. Owners and other parties in interest may file a verified answer and claim to the property, and if an answer is filed a hearing shall be held. At the hearing the burden of proof is on State, and if not met, the court shall order the property released to the owners.

¶ 16 It is further instructive that § 2–506(R)(3) provides the court may order attendance of persons preparing certain laboratory reports upon the motion of *either party*. (Emphasis added). It is clear the Legislature, through § 2–506, intended to afford Claimant the status of party to the forfeiture proceedings. The element of identity of parties is satisfied.

¶ 17 Similarly, there is identity of subject matter. While one proceeding was criminal, and the other civil, there is a common issue in that State was required to prove in both that the seized currency was possessed by Claimant or her decedent in violation of the Act. The criminal charge alleged violation of § 2–503.1, transportation of proceeds known to be derived from violation of the Act. The forfeiture action was grounded in alleged violation of § 2–503(A) and(B). Each of the specific allegations supporting forfeiture requires a finding the funds were somehow connected to a violation of the Act, or an intended violation of the Act.

¶ 18 Similarly, State and Claimant were in the same antagonistic positions in both actions. State, as the proponent, had the burden of proof in both. Claimant defended both by asserting no violation of Oklahoma law under the Act. The trial court in the criminal action dismissed based on a finding there was no violation of the Act. That judgment became final before the trial court granted summary judgment here. The trial court in the forfeiture case found itself

bound by collateral estoppel, held Claimant's arrest was illegal, ordered all evidence obtained pursuant to Claimant's arrest excluded, and granted summary judgment in Claimant's favor. We find the trial court acted properly.

¶ 19 State's proposition that Claimant had no standing because of her disclaimer is repeated as its first alleged material fact still in controversy. Having found the trial court acted properly in excluding all evidence obtained pursuant to Claimant's illegal arrest, we find no merit in this contention. Putting aside the question of whether the disclaimers were voluntary in view of the illegal arrest, State would be precluded, under Claimant's motion *in limine*, from introducing the disclaimers and any statements made by Claimant as fruit of the poisonous tree. State would have no way to prove its contention that Claimant abandoned the money.

¶ 20 The remainder of State's asserted material facts remaining in controversy are merely reiterations of the specific allegations found in its notice of forfeiture. We have held above the trial court correctly found it was bound under the doctrine of collateral estoppel to hold there was no violation or intended violation of the Act, and consequently that the forfeiture provisions of the Act did not apply. There is no need to revisit that issue again under the guise of material facts in controversy. No controversy remains because the trial court was precluded from considering the question of violation of the Act anew.

¶ 21 The trial court's judgment is AFFIRMED.

¶ 22 BUETTNER, P.J., concurs.

¶ 23 GARRETT, J., concurring.

GARRETT, J., concurring:

¶ 1 In addition to the matters set forth in the opinion, it is clear that the attempted forfeiture is based on suspicion, and not on evidence of facts.

¶ 2 Also, it is common knowledge, in law enforcement circles, that minor odors of drugs or the existence of trace quantities of drugs on circulated paper money, without more, does not prove a crime.