2012 OK CIV APP 75

**The STATE of Oklahoma, ex rel. Greg Mashburn, District Attorney for the Twenty–First Prosecutorial District, Petitioner/Appellant,**

**v.**

**$18,007.00 IN U.S. CURRENCY Seized from Eric Palomares and Alejandro Sanchez, Respondents/Appellees.**

**No. 109132.**

Court of Civil Appeals of Oklahoma, Division No. 4.

July 10, 2012.

As Corrected Aug. 10, 2012.

David J. Batton, Assistant District Attorney, Norman, Oklahoma, for Petitioner/Appellant.

Fred J. Shaeffer, Shaeffer, Shaeffer & Kernal, Norman, Oklahoma, for Respondents/Appellees.

KEITH RAPP, Judge.

¶1 The trial court plaintiff, The State of Oklahoma (State), appeals the trial court's Journal Entry sustaining the Respondents', Eric Palomares and Alejandro Sanchez, (collectively referred to as Respondents) demurrer, dismissing the case, and ordering the $18,007.00 in U.S. Currency returned to Respondents. The trial court rendered its decision after the conclusion of a non-jury trial.

## BACKGROUND

¶2 The appellate Record contains a transcript of the trial court's ruling after the close of the non-jury trial. However, the appellate Record does not contain a transcript of the non-jury trial. This Court entered an Order dated March 16, 2012, direct-

ing the State to provide this transcript or show cause why the appeal should proceed without the transcript. The Order directed compliance on or before April 18, 2012. The State did not respond in any manner to the Order. Therefore, this appeal shall proceed without the transcript of the non-jury trial.

¶ 3 The limited factual background is taken from the parties' Briefs where the parties are in agreement as to the facts. Admissions in briefs may be considered as supplementing an otherwise deficient record. *Stork v. Stork*, 1995 OK 61, 898 P.2d 732 n. 10.

¶ 4 On April 16, 2010, Officer Morgan, of the Norman Police Department, stopped a 2002 Acura for speeding. The vehicle was driven by Mr. Palomares and Mr. Sanchez was a passenger in the vehicle.

¶ 5 As Officer Morgan approached the vehicle, he noticed numerous air fresheners hanging in the vehicle and an odor. He believed the odor to be of marijuana, coming from the vehicle. Officer Morgan asked Mr. Palomares to accompany him to his police vehicle. Upon questioning by Officer Morgan, Mr. Palomares stated he was from Kansas City and was traveling to Houston to purchase a vehicle. He further stated they were staying in Houston for the weekend at Mr. Sanchez's brother's home and the Acura belonged to Mr. Sanchez's sister. Mr. Palomares told Officer Morgan the passenger was a friend and his name was Ramone.

¶ 6 Officer Morgan spoke with both Mr. Palomares and Mr. Sanchez. Officer Morgan testified the Respondents gave inconsistent answers concerning why they were traveling to Houston and how long they would stay in Houston. However, he also conceded that one passenger intended to purchase a car and the other to visit family.

¶ 7 Officer Morgan asked for consent to search the vehicle, but then requested that a dog be used. Officer Sumner handled the dog and the dog alerted, leading to a search of the vehicle. In their Brief, Respondents do not concede that the dog was a dog qualified to detect marijuana. Officer Morgan stated that he discovered what he believed to be marijuana residue in the vehicle, but did not seize the residue, take samples, or take photographs. The appellate Record does not show where the residue was found in the vehicle.

¶ 8 Officer Morgan seized cash from the persons of the Respondents and from the console in the car. The total was $18,007.00. Eventually, the Respondents were allowed to leave. With the exception of the cash, all personal belongings and the vehicle were returned. They were told to get in the car and drive off. The appellate Record does not show that the Respondents were charged with a crime or cited for a traffic offense.

¶ 9 The District Court Record, that is included in the appellate Record, shows that the State filed a Notice of Forfeiture on May 12, 2010. The Notices were sent to the Respondents at their Kansas City, Kansas residences. Respondent Sanchez was served the Notice on May 18, 2010. Respondent Palomares could not be located for service. However, both filed an answer through their attorney claiming an interest in the cash superior to the State.

¶ 10 On August 31, 2010, the trial court set the matter for non-jury trial on November 16, 2010. On November 12, 2010, the District Attorney issued subpoenas for Respondents to appear for the trial. The subpoenas directed the Respondents to produce driver's licenses, birth certificates and W–2 forms for the past three years.

¶ 11 The subpoenas were served on Respondents' counsel, who then filed a Motion to Quash the service. The Respondents asserted that the subpoenas to out-of-state witnesses did not comply with Oklahoma law and were untimely. They also alleged that they were not afforded sufficient time to acquire all of the documents. Last, in the Motion to Quash, the Respondents stated that each Respondent, if called to testify or required to produce exhibits, would assert his privilege against self-incrimination.

¶ 12 The appellate Record, including the District Court Docket Sheet, does not include any response by the State to the Motion to Quash. At some point in the non-jury trial proceedings, the trial court sustained the Motion to Quash. The trial court's Journal

Entry reflects that ruling, but the basis for the ruling does not appear in the appellate Record.

¶ 13 In their Briefs, the State and Respondents agree that the Respondents appeared for the non-jury trial.[1] The State called each Respondent to testify and each asserted their privilege not to testify.

¶ 14 The trial court sustained the Respondents' demurrer to the evidence, dismissed the State's petition for forfeiture, and ordered the money returned. The State appeals.

## STANDARD OF REVIEW

¶ 15 In a civil action tried before the bench, the decision of the trial court, sitting as a trier of fact, is entitled to the same consideration, on appeal, as that given to a jury. *Dismuke v. Cseh,* 1992 OK 50, ¶ 7, 830 P.2d 188, 189–90. The proper standard of review in an action at law is that the findings of the trial court are as binding on appeal as the verdict of a jury, and if there is competent evidence to support the findings, they will not be disturbed on appeal. *Id.* The trial court's judgment, absent pure error of law, will not be disturbed on appeal if there is any competent evidence reasonably tending to support the trial court's conclusion. *State v. $10,000 In United States Currency,* 1999 OK CIV APP 136, ¶ 13, 993 P.2d 803, 805; *State v. $11,566.00,* 1996 OK CIV APP 67, ¶ 12, 919 P.2d 34, 38. Where there is competent evidence to support the trial court's finding of fact, the appellate court cannot, on appeal, alter that finding, nor substitute its judgment for that of the trial court. *Id.*

¶ 16 The law abhors forfeitures and statutes authorizing forfeiture of private property are to be strictly construed. *State ex rel. Dept. of Public Safety v. 1985 GMC Pickup,* 1995 OK 75, ¶ 8, 898 P.2d 1280, 1282. A forfeiture will not be allowed except when required by clear statutory language. *Id.*

¶ 17 The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rul-

ings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1.

## ANALYSIS AND REVIEW

### A. Standing

¶ 18 The Record shows that the money in question was taken from the persons or control of the Respondents. It also shows that the vehicle in which they were riding and driving was searched after a stop, property under control of the Respondents removed, and money obtained. Subsequently, the Respondents, along with their vehicle and all property, except the money, were released and given permission to leave the search site without charges being filed.

¶ 19 The Record contains no allegations the money retained was not the personalty of the Respondents upon whose person or control it was found or that they did not have a superior right to it, except as claimed by the State as forfeiture proceeds. The Record, however, does show that Respondents did claim ownership at the time of the stop. Having established by the Record and Briefs that the State failed to meet its burden for forfeiture, the property taken from the Respondents in the police stop and search is rightfully the property of the Respondents. As such, the Respondents do have standing to bring this suit to reclaim their money improperly retained by the police.

### B. Sustaining the Motion to Quash

¶ 20 In its appeal, the State presents two propositions. First, the State claims that the trial court erred by quashing the subpoenas issued to the Respondents and served on their attorney. Second, the State maintains that it moved to strike the Respondents' Answers, putting them in default, and that the trial court erred in not doing so. Although the trial court's ruling on the motion to strike is part of the Journal Entry, the appellate Record does not contain the motion. Additional issues listed in the Petition-in–Error, as amended, were not briefed and thus are waived. Okla. Sup.Ct. Rule 1.11(k)(1), 12 O.S.2011, Ch. 15, app. 1.

---

**1.** State's Brief at page 11; Respondent's Brief at page 7.

¶ 21 According to the State's summary of the case attached to its Amended Petition-in-Error, the trial court sustained the motion to quash because of service of the subpoenas on Respondents' counsel. However, the Respondents appeared for the trial and the State called them to testify.

¶ 22 Thus, the error, if any, is harmless.[2] The appellate Record does not reflect whether the Respondents produced any of the subpoenaed documents, so the issue is not completely moot. However, the State has not demonstrated any prejudice, or how the trial outcome was affected by that ruling, or a violation of any of its rights. The State has not shown the relevance of the subpoenaed documents to the issues for trial or how any failure to produce the requested documents prejudiced the State's case in any manner.[3]

¶ 23 In cases involving "harmless error" the judgment will not be set aside.[4] 12 O.S.2011, § 78; *Walker v. Mills*, 1938 OK 205, 182 Okla. 480, 78 P.2d 697; *see* Fed. R.Civ.P. 61 and *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (the harmless error provisions also direct the reviewing court to give judgment without regard to technical defects which do not affect substantial rights).[5] Thus, there exists a comprehensive policy not to disturb judgments unless the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

¶ 24 The State has not demonstrated a ground for reversal based upon the trial court having quashed the subpoenas issued to the Respondents.

## C. Error Due to Denying Motion to Strike Answers.

¶ 25 The premise of the State's appellate position is that its evidence satisfied its bur-

---

2. The reason for the trial court's ruling does not appear of Record. This Court notes that the Respondents are parties to this action and are represented by counsel here and at trial. Subpoenas requiring a *party's* production of documents are served on the party's attorney. 12 O.S.2011, §§ 2004.1(B)(1), 2005(B). On the other hand, the subpoenas were issued and served four days before trial, and that may have played a role in the trial court's decision. 12 O.S.2011, § 2004.1(C)(3) (authorizing the trial court to quash a subpoena if it fails to give a reasonable time for compliance).

3. The parties' Briefs state that Mr. Palomares was driving and Officer Morgan stopped him for speeding. Officer Morgan "inspected his paperwork." The appellate Record does not indicate that Officer Morgan cited Mr. Palomares, the driver, for not having a driver's license. The circumstances suggest that identification was demanded of Mr. Sanchez. The State does not challenge the Respondents' identity or explain how production of a driver's license, a birth certificate, and three years of W–2 forms pertains to the case.

4. Section 78 provides:

   The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.
   *See* 20 O.S.2011, § 3001.1 which provides:

   No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.
   Section 3001.1 originated in Title 22. The Supreme Court has indicated that this statute applies only to jury cases. *Capshaw v. Gulf Ins. Co.*, 2005 OK 5, ¶ 8, 107 P.3d 595, 600. In addition, the Court has instructed:
   To safeguard meticulously the fair trial of the litigants' rights is the object of judicial procedure; but as to error which is harmless the State of Oklahoma, by the adoption of its harmless error statute, 22 O.S.1941 § 1068, has relaxed the rigid rules of the ancient common law where in fact the complained of error is harmless, as we hold it to be here under the circumstances shown by the record.
   *Carpenters' Local 1686 v. Wallis*, 1951 OK 293, ¶ 18, 205 Okla. 285, 237 P.2d 905, 908.

5. Rule 61 applies to District Courts and reads:
   Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect a party's substantial rights.

den of proof.[6]  Therefore, if the State's motion to strike the answers had been sustained, the Respondents could not meet their burden of proof either in response or as to affirmative defenses.

¶ 26 However, other than the recital in the Journal Entry that the court overruled the State's oral motions to strike Respondents' answers, there is nothing in the appellate Record from which this Court may discern whether the trial court erred by making the ruling.[7]  The State, as appellant, has the burden to produce a record and materials showing error.  *Ray v. Ray*, 2006 OK 30, ¶ 12, 136 P.3d 634, 637.  Legal error will not be presumed from a silent record. *Hamid v. Sew Original*, 1982 OK 46, 645 P.2d 496.  Even if the Respondents had not appeared, the State still had to establish the basis for forfeiture.  *State ex rel. Ladd v. $457.02*, 2011 OK CIV APP 93, ¶ 10, 260 P.3d 1288, 1293.

¶ 27 The appellate Record, as augmented by the agreed part of the parties' Briefs, does not establish that the State met its burden.  In order to be subject to forfeiture, the Respondents' money must be within the provisions of 63 O.S.2011, § 2–503(A)(6) or (7).[8]

### 1. Section 2–503(A)(6).

¶ 28 The appellate Record does not contain any evidence showing that the Respondents' property meets the definition of Section 2–503(A)(6).  The trial court assumed that Officer Morgan found marijuana residue.[9]  The trial court concluded, "there is no connection or nexus between the residue and the defendants or the money confiscated from them." [10]

¶ 29 The State has the burden to prove that a nexus exists between the property subject to forfeiture and a violation of the Uniform Controlled Dangerous Substances Act (U.C.D.S.A.), in cases where the claim is that the property to be forfeited was specifically involved in or facilitated the violation. *See, State ex rel. Redman v. $122.44*, 2010 OK 19, ¶ 15, 231 P.3d 1150, 1155 (weapons in a residence where marijuana was found); *Peterson v. Crawshaw*, 2007 OK CIV APP 70, ¶ 6, 165 P.3d 356, 357–58 [real property used in the violation subject to forfeiture under Section 2–503(A)(8) ].  Therefore, the State has not established a basis for forfeiture under the provisions of Section 2–503(A)(6).

### 2. Section 2–503(A)(7).

¶ 30 The State also relies upon the provision in Section 2–503(A)(7), establishing a

---

6.  It also appears that the State's argument might be that if the trial court had sustained the motion to strike the answers, the Respondents would be in default of an answer to the State's petition. The State appears to conclude that it would then be entitled to immediate judgment by default. The State's position fails to take into account the notice provisions of Rule 10, Rules For District Courts, 12 O.S.2011, Ch. 2, app.

    If the State's position happens to be that default should be imposed as a sanction, then the State has failed to cite authority for that position.  Also, the State failed to account for the remedy of contempt (and associated proceedings that are involved in a contempt matter) provided in 12 O.S.2011, § 2004.1(E).

7.  The Journal Entry also recites that the trial court overruled the State's oral motion for default.  The State has not specifically briefed that part of the ruling and has thus waived it.

8.  The provisions of Section 2–503(A)(6) and (7) read:

    6.  All things of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of the Uniform Controlled Dangerous Substances Act, all proceeds traceable to such an exchange, and all monies, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of the Uniform Controlled Dangerous Substances Act;
    7.  All monies, coin and currency found in close proximity to any amount of forfeitable substances, to forfeitable drug manufacturing or distribution paraphernalia or to forfeitable records of the importation, manufacture or distribution of substances, which are rebuttably presumed to be forfeitable under the Uniform Controlled Dangerous Substances Act. The burden of proof is upon claimants of the property to rebut this presumption.

9.  The trial court observed that no residue was offered in evidence.  It appears that there is no physical evidence of residue.  Moreover, the Respondents were released at the scene of the traffic stop together with their vehicle that had contained the residue.  These officers obviously considered that neither the Respondents nor the vehicle were involved in any criminal activity.

10.  Court ruling, Transcript, pp. 3–4.

rebuttable presumption that money is forfeitable when "found in close proximity" to any amount of "forfeitable substances."[11] Thus, the State maintains that it established its case, aided by the presumption, and argues that the Respondents failed to meet their burden to rebut, because they failed to testify. This presents two matters for consideration: first, what is the role of the presumption, and, second, must the State show a nexus between the money and a violation of U.C.D.S.A. in cases under Section 2–503(A)(7).

¶ 31 Each of those questions is resolved by *State ex rel. Harris v. One Thousand Two Hundred Sixty–Seven Dollars*, 2006 OK 15, 131 P.3d 116, and *State ex rel. Campbell v. Eighteen Thousand Two Hundred Thirty–Five Dollars*, 2008 OK 32, 184 P.3d 1078.

¶ 32 Here, the presumed fact is that the Respondents' money is forfeitable. The foundation facts are: (1) existence of forfeitable substances, and (2) money found in close proximity to forfeitable substances. In *State ex rel. Harris*, the Court reviewed a summary judgment on the State's motion directing forfeiture. There, the State also relied on the "close proximity" provision.

¶ 33 The State's evidentiary materials included a laboratory analysis establishing the fact of a controlled substance. The State also submitted a police affidavit showing that the respondent had possession of the controlled substance on his person and the seized cash was also on his person. Thus, the "close proximity" criterion existed and the burden shifted to the respondent to place before the court evidentiary materials showing disputed facts. He did not do so and summary judgment was affirmed.

¶ 34 In *State ex rel. Campbell*, one question before the Court was whether simple possession in violation of the U.C.D.S.A. can give rise to the rebuttable presumption that monies found in close proximity to any amount of controlled substances are forfeitable. In its holding that simple possession sufficed, the Court elaborated upon Section 2–503(A)(7), and the rebuttable presumption in that Section.

¶ 35 The Court held that the State "must produce evidence that the monies were found in close proximity to any amount of forfeitable substance." *Campbell*, 2008 OK 32 at ¶ 8, 184 P.3d at 1080. After the State meets this burden the presumption arises that the monies are forfeitable. *Id.*

¶ 36 The Court then distinguished the provisions of Section 2–503(A)(7) from the balance of the forfeiture provisions of Section 2–503(A)(2)–(6) and (8)-(9). *Campbell*, 2008 OK 32 at ¶¶ 11–12, 184 P.3d at 1081. The Court described the focus of Section 2–503(A)(2)–(6) and (8)-(9), as being on the "forfeitability of instrumentalities of drug trafficking" and concluded that the Legislature intended that those forfeiture provisions apply to drug trafficking.

¶ 37 The Court extended this reasoning to Section 2–503(A)(7). Thus, monies to be forfeitable must also apply to drug trafficking. *However, the Court ruled that the "close proximity" provision creates a rebuttable presumption that the monies are used in drug trafficking.*[12] The Court then stated that the person "claiming the monies may

---

**11.** 63 O.S.2011, § 2–503(A)(1) provides that the following shall be subject to forfeiture:

1. All controlled dangerous substances which may have been manufactured, distributed, dispensed, acquired, concealed or possessed in violation of the Uniform Controlled Dangerous Substances Act.
Schedule I lists any material, compound, mixture, or compound which contains marijuana. 63 O.S.2011, § 2–204(C)(12). "Marijuana" is defined in 63 O.S.2011, § 2–101(23):
23. "Marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds or resin, but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of such plant which is incapable of germination.

**12.** For cases collected reaching the same conclusion, *see*, Burden of Proof and Presumptions in Tracing Currency, Bank Account, or Cash Equivalent to Illegal Drug Trafficking so as to Permit Forfeiture, or Declaration as Contraband, under State Law, 104 A.L.R.2d 229 (2002).

rebut the presumption by showing that the 'forfeited currency bore no nexus to a violation of the Act.'" *Campbell*, 2008 OK 32 at ¶ 12, 184 P.3d at 1081.

¶ 38 Thus, *Campbell* also requires a nexus to a violation when the forfeiture involves money. However, the Court supplies this nexus with aid of the rebuttable presumption.[13] This conclusion is supported by the discussion in the dissent.

¶ 39 The dissenting Opinion observed that the State must establish a nexus to a violation in order to ensure that the "government is seizing *actual* instruments of the illegal drug trade," as opposed to property that had only an incidental connection. *Campbell*, 2008 OK 32 at ¶ 12, 184 P.3d at 1088 (Reif, J., dissenting). The dissent argued that the State could forfeit money, but could not presume that the money was connected to a violation of the U.C.D.S.A.

¶ 40 Thus, the state of the law is that there must be a nexus between the property to be forfeited and the violation of the U.C.D.S.A. This nexus must be proven by the State. In the case of money, the State's burden of proof is aided by the rebuttable presumption of a nexus when the money is found in close proximity to the forfeitable substances.

## CONCLUSION

¶ 41 Here, the appellate Record is sparse. At best, Officer Morgan found a residue of something. While he believed the residue was marijuana, there is no evidence in the appellate Record from which to identify the residue or of Officer Morgan's qualifications to identify the residue as the marijuana substance that is banned in Schedule I. Moreover, the appellate Record does not show where the residue was found other than in the vehicle, which vehicle did not belong to the Respondents. The money was taken from the persons of the Respondents and from the car console.

¶ 42 The trial court found that there was an absence of proof of a nexus between the money and the residue. The trial court also found that the State had not met its burden.

¶ 43 Error is not presumed. The trial court's decision, in the absence of an appellate Record to the contrary, cannot be said to be against *Campbell v. Eighteen Thousand Two Hundred Thirty–Five Dollars*, 2008 OK 32, 184 P.3d 1078. Thus, the trial court's judgment may be sustained because the State, even aided by a presumption, did not prove its case. In other words, under the appellate Record, the State has failed to demonstrate that there was a forfeitable substance or that the money was in close proximity to a forfeitable substance, so as to establish the nexus with the aid of the rebuttable presumption.

¶ 44 Therefore, the judgment of the trial court is affirmed.

¶ 45 **AFFIRMED.**

GOODMAN, P.J., and THORNBRUGH, J., concur.

---

**13.** Respondents have not raised the question of whether aiding the State's case with a presumption only in the instance of money presents a case of violation of the Equal Protection of the Laws Clause of the United States Constitution. The class is composed of all owners of property subject to forfeiture where the State has to demonstrate a nexus between violation and the property subject to forfeiture. The disparate treatment follows from the allowance of a presumption of a nexus when the property is money and reversing the burden by requiring the money's owner to prove that there is no nexus. In the cases other than money, the State has the burden of proof of a nexus and this burden carries with it the burden of persuasion. In the instance of money, the statute places the burden of proof, and thus the burden of persuasion, on the property owner when the State invokes the "close proximity" rebuttable presumption.