2003 OK CIV APP 102

STATE of Oklahoma, ex rel. OKLAHOMA BUREAU OF NARCOTICS AND DANGEROUS DRUGS CONTROL, Malcom Atwood, Director, Petitioner/Appellee,

v.

ONE (1) STEVENS 12 GA. SHOTGUN, Ser. # 0895260; One (1) Interarms 7MM Rifle, Ser # B230478 With Scope; One (1) Browning Arms 7MM Rifle, Ser # 137PZ13543, Bushnell Scope and Sling; One (1) Wards Western Field 12 GA. Shotgun, Ser. # 02177V; One (1) Winchester 308 Rifle, Ser. # 84394 and Sling; One (1) Remington Arms .410 Rifle, Ser. # R013274H; One (1) Springfield Armory U.S. MDL 1898 Rifle, No Serial Number; One (1) Cannon Breech Rifle, No Serial Number; One (1) Colt .45 Pistol., Ser. # SN06313 With Extra Magazine; One (1) Colt Diamond Back .22 Revolver, Ser. # 042335; One (1) Colt Python .357 MAG. Revolver, Ser # E31973; One (1) Browning Semi Auto .22 Rifle, Ser # 0383ZPY166, With Scope; One (1) Winchester .22 MAG Rifle, Ser. # F204969; One Browning 44 Rifle, Ser. # 1277PX167; One (1) Remington 34 Rifle, Ser. # 6335; One (1) Colt .380 Pistol, Ser. # MU67357; One (1) Colt .380 Pistol, Ser. # RC97788; One (1) Browning 20 Gauge Shotgun, Ser. # 01079PZ161; One (1) Browning 20 Gauge Shotgun, Ser. # 17199PT162; One (1) Thompson .45 Black Powder Pistol, Ser. # 14141, With Leather Holster; One (1) .54 Black Powder Rifle, Ser. # 47111; One (1) Thompson .50 Black Powder Rifle, Ser. # 229533; One (1) Ruger Semi Auto .22 Rifle, Ser. # 24580135; One (1) Cannon Breech 12 Gauge Shotgun, Ser. # A2230; Miscellaneous Ammunition, Respondents/Appellants.

No. 96,676.

Court of Civil Appeals of Oklahoma, Division No. 4.

July 29, 2003.

Mark Lane, Assistant General Counsel, Oklahoma State Bureau of Narcotics, Oklahoma City, OK, for Appellee.

Michael Gardner, Law Offices of Joe Farnan, Purcell, OK, for Appellants.

Opinion by JOHN F. REIF, Judge.

¶ 1 This appeal concerns the forfeiture of twenty-five firearms that were seized during the execution of a search warrant on the home of Norvel West, Sr. Agents for the Oklahoma Bureau of Narcotics and Dangerous Drugs obtained the search warrant after meeting with Mr. West outside the house and obtaining his consent to examine suspected marijuana plants growing on his property about one hundred yards from the house. In the time between examining the plants (that appeared to be cultivated) and the execution of the search warrant, the agents took Mr. West into custody and detained two occupants of the house outside the house. Neither Mr. West nor the two occupants had any weapons on their persons. During the search of the house, a loaded handgun was found beneath a sofa cushion, but all the other firearms were found in plain sight, primarily in an open gun cabinet and on two gun racks. In addition to the firearms, the agents found a small amount of marijuana, marijuana seeds, tie-down material for growing plants, and evidence marijuana had been smoked in the house.

¶ 2 Mr. West objected to the forfeiture of the firearms, but died before the forfeiture hearing. Nola Shepard, his mother and the executrix of his estate, pursued the return of the firearms. Ms. Shepard explained that Mr. West was a gun collector and asserted there was no "nexus" between the firearms and the marijuana cultivation and use.

¶ 3 In granting the forfeiture of the firearms, the trial court stated: "I don't see any evidence that they use [the cultivated marijuana] for profit [and] I don't know that they're dealers, but I do know that the cultivation is a crime even if it was just for personal use." The trial court further observed: "I believe that in this particular family guns are in their culture. They collect guns. They use guns to shoot rats. [G]uns are a part of their history." The court went on to say, however, that "just because you have an additional innocent use of the guns is not … a defense to the forfeiture if the guns

are used or available for use to facilitate the crime [of cultivating marijuana]." The trial court concluded that "when you have guns in a house where there are drugs, the implication is that the guns are used to ward off people ... in the cultivation of the marijuana and the protection of the property from other drug users or dealers or for protecting the marijuana and the people that are doing the cultivation from attack from wherever it comes."

¶ 4 The dispositive question on appeal is whether the trial court correctly concluded that the firearms in question were "available for use in any manner to facilitate a violation of the Uniform Controlled Dangerous Substance Act." 63 O.S.2001 § 2–503(A)(9). There is a split of authority in both the federal circuits and among state courts that have considered the issue of the type of connection property must have to a crime in order to be forfeited. *In re Forfeiture of $5,264*, 432 Mich. 242, 439 N.W.2d 246, 254 (1989). In this case, the Michigan Supreme Court noted that one line of cases requires a "substantial connection" between the property and the underlying criminal activity, while the other line of cases allow forfeiture if there is "any manner" of connection to the unlawful drug offense. The Michigan Supreme Court adopted the "substantial connection" requirement, stating it "strikes the proper balance between the rights of the individual property owners and the state's need to use the weapon of forfeiture in its war on wholesale drug dealing."

■ ¶ 5 In view of the fact that the Oklahoma legislature provided for forfeiture of weapons that were "available for use *in any manner* to facilitate a violation of the [Act]," this court does not believe that a "substantial connection" must be shown to support forfeiture. We do agree, however, with the Michigan Supreme Court that it would be "unreasonable ... for a court to order the forfeiture of property which has only an incidental or fortuitous connection to the unlawful activity." *Id.*

¶ 6 In *Katner v. State*, 655 N.E.2d 345, 348–49 (Ind.1995) (citing *U.S. v. Real Estate Known as 916 Douglas Avenue*, 903 F.2d 490, 494 (7th Cir.1990)), the Indiana Supreme Court noted that the government must demonstrate that the nexus between the property sought in forfeiture and the underlying offense is more than incidental or fortuitous. The Indiana Supreme Court observed that "[t]his nexus requirement is a means to guarantee that the government is seizing *actual* instruments of the illegal drug trade ... in hopes of retarding, through asset forfeiture, expanding drug commerce." (Emphasis added.) *Id.* at 349 (emphasis added).

¶ 7 The establishment of some link or nexus is particularly important in cases involving a residence where people commonly keep *all* of their possessions (both legal and illegal) to which they want ready access. If mere presence with drugs and a dangerous capability to protect the drugs were alone sufficient to support forfeiture, a child's baseball bat, kitchen knives, ordinary scissors, sharp tools, and even the family dog who displays aggressiveness toward strangers would all be subject to forfeiture as "available weapons" if found in the same room as drugs.

■ ¶ 8 Like the Indiana Supreme Court, we believe the nexus that the legislature intended the state to demonstrate is found in the statutory language. To forfeit weapons under § 2–503(A)(9), the State must demonstrate that the weapons have somehow "facilitated" the offense or offenses that serve as the basis of their forfeiture. This is the approach taken in *Platt v. United States*, 163 F.2d 165 (10th Cir.1947).

¶ 9 The *Platt* case involved the forfeiture of an automobile that a drug addict drove to a drugstore to obtain morphine by a forged prescription. The forfeiture statute in *Platt* provided for forfeiture of any vehicle that was used "to facilitate the ... receipt, possession [or] purchase ... of any contraband article." *Id.* at 166. The court noted that "[t]he word 'facilitate' is one of common use in business and transactions between ordinary persons [and] is a term of everyday use, with a well understood and accepted meaning." *Id.* The court cited standard dictionary sources, one of which defined "facilitate" as meaning: "To make easy or less difficult; to free from difficulty or impediment; as to facilitate the execution of a task. (2) To

lessen the labor of; to assist; . . . ." *Id.* at 166–67. The court concluded, "What is then meant by the use of the word 'facilitate' is that if an automobile is used to assist in the commission of the crime, it is subject to forfeiture." *Id.* at 167 (footnote omitted).

¶ 10 The court noted that the crime charged was illegal purchase of narcotics and "[t]he use of the automobile did not make the accomplishment of *the purchase* more easy, or free it from obstructions or hindrance, or make the sale any less difficult." *Id.* at 167 (emphasis added). The court stressed that the automobile "was merely the means of locomotion . . . to get to the store more quickly than if she had walked or had used a slower means of transportation [but any] means employed . . . in going to the store had nothing to do with the purchase." *Id.*

■ ¶ 11 Like the *Platt* case, the necessary facilitation nexus has not been shown between the firearms in the residence and the marijuana being cultivated on the property some one hundred yards from the residence, or even the possession and use of marijuana in the residence. In particular, there is no showing that the firearms made the cultivation and possession of marijuana more easy or less difficult, or somehow lessened the labor of the cultivation or possession.

¶ 12 In reaching this conclusion, we are cognizant that an agent with considerable training and experience testified that marijuana cultivators will have numerous weapons around their residence or growing operation to "use those weapons to protect their crops." However, he prefaced this testimony by also relating his general experience that "a lot of people own firearms throughout the state." While the agent's testimony helps explain why he would seize the firearms in the course of serving a search warrant for evidence of cultivating marijuana, it does not supply the necessary facilitation nexus to support forfeiture.

¶ 13 In reaching this conclusion, we wish to stress that the State can meet its burden to demonstrate a facilitation nexus by circumstantial evidence. We also recognize that the "totality of the circumstances" may indeed provide the basis of an inference to support forfeiture, as the trial court observed. However, the totality of the circumstances in the instant case do not provide the basis of an inference that the firearms in question facilitated the cultivation and possession of marijuana. It was necessary to show some additional fact or circumstance, such as statements by Mr. West that he would shoot anyone who bothered his marijuana crop, testimony that Mr. West had been observed carrying a firearm while tending or harvesting the plants, or even that a firearm or weapon was found concealed on his person when he was arrested.

¶ 14 Under the totality of the circumstances in the instant case, the connection between the firearms and the drug offenses was nothing more than incidental and fortuitous. Significantly, the trial court recognized that the firearms were present in the residence, because the residents "collect guns." This gun collection, which included a vintage military rifle, match pistols and black powder firearms, had no more connection to the drug offenses than the furniture in the residence or the clothes being worn by Mr. West. Without a facilitation nexus, the firearms are not subject to forfeiture and the trial court erred in ordering the firearms forfeited in the absence of evidence to establish a facilitation nexus. Accordingly, the order of forfeiture is reversed and this case is remanded with directions to deny forfeiture and return the firearms to the executrix of the estate of Mr. West.

¶ 15 REVERSED AND REMANDED WITH DIRECTIONS.

GOODMAN, P.J., and RAPP, J., concur.