184 P.3d 1078 (2008)
2008 OK 32
STATE of Oklahoma ex rel. Mark CAMPBELL, District Attorney, Plaintiff/Appellant,
v.
EIGHTEEN THOUSAND TWO HUNDRED THIRTY-FIVE DOLLARS IN U.S. CURRENCY ($18,235.00), Defendant,
Shawn Gandy, Appellee.
No. 104,016.
Supreme Court of Oklahoma.
April 8, 2008.
Greg Jenkins, Assistant District Attorney, Atoka, Oklahoma, for the Appellant.
Robert Locke, Locke & Moore, Tulsa, Oklahoma, for the Appellee.
TAYLOR, J.
¶ 1 The questions before this Court are (1) whether simple possession in violation of the Uniform Controlled Dangerous Substances Act (the Act), 63 O.S.2001, §§ 2-101 et seq., can give rise to title 63, subsection 2-503(A)(7)'s rebuttable presumption that monies found in close proximity to any amount of a controlled dangerous substance are themselves forfeitable, (2) whether forfeiture pursuant to subsection 2-503(A)(7) of the Act is independent of an in personam criminal charge or conviction, and (3) whether a subsection 2-503(A)(7) forfeiture is limited by the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. We answer questions one and two in the affirmative. We answer question three in the negative.

I. FACTS
¶ 2 Shawn Gandy was charged in Bryan County, Oklahoma, for possession of marihuana.[1] Gandy agrees that the State of Oklahoma has evidence that at the time of his arrest, it recovered $8,035.00 from his person, 2.86 grams of marihuana from the vehicle's passenger compartment, $10,200.00 in a plastic bag in a shaving kit which was in an overnight bag in the vehicle's cargo bed, and 0.21 grams of marihuana in the same shaving kit. The total of monies found was $18,235.00.

II. PROCEDURAL HISTORY
¶ 3 The State petitioned for forfeiture of the $18,235.00 in the district court of Bryan County, Oklahoma, pursuant to title 63, subsection 2-503(A)(7) of the Act, based on its being found in close proximity to a controlled dangerous substance. Gandy filed a motion to dismiss, relying on State v. Eighteen Thousand Six Hundred Sixty-Three Dollars and Twenty-Five Cents Cash, 2000 OK CIV APP 102, 11 P.3d 1253. Gandy argued that forfeiture under subsection 2-503(A)(7) is not authorized except when the forfeiture is based on a violation of the Act of more than simple possession. Gandy further argued that if forfeiture is proper under subsection 2-503(A)(7) based on simple possession, then the forfeiture violates the prohibition against the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.
*1080 ¶ 4 The State responded that the evidence is sufficient to allow forfeiture under title 63, subsection 2-503(A)(7). The State also submitted because forfeiture is civil in nature, the Eight Amendment is not implicated.
¶ 5 The district court ruled that "[f]orfeiture of large sums of money in connection with a misdemeanor possession of marijuana prosecution violates the excessive fines clause of the Eighth Amendment." The district court ordered the seized money returned to the claimant. The Court of Civil Appeals ruled that a simple possession charge is insufficient to support a forfeiture of money found in close proximity to a controlled dangerous substance.
¶ 6 The relevant provisions of title 63, subsection 2-503(A)(7), as amended in 2004 and under which the State seeks forfeiture, state:
A. The following shall be subject to forfeiture:
1. All controlled dangerous substances which have been . . . possessed in violation of the Uniform Controlled Dangerous Substances Act;
. . .
7. All monies, coin and currency found in close proximity to any amount of forfeitable substances, to forfeitable drug manufacturing or distribution paraphernalia or to forfeitable records of the importation, manufacture or distribution of substances, which are rebuttably presumed to be forfeitable under the Uniform Controlled Dangerous Substances Act. The burden of proof is upon claimants of the property to rebut this presumption[.]
(Emphasis added.) A 2004 amendment to subsection 2-503(A)(7) added "any amount of before "forfeitable substances."
¶ 7 This Court has not addressed this subsection either before or after the 2004 amendment. However, it is clear from the Court of Civil Appeals' decisions and the briefs in this case that subsection 2-503(A)(7)'s construction has not been uniform. State ex rel. Lane v. Seven Hundred Twenty Five Dollars ($725.00), 2006 OK CIV APP 74, ¶¶ 9-12, 136 P.3d 1076, 1078-1079; State v. Eighteen Thousand Six Hundred Sixty-Three Dollars and Twenty-Five Cents ($18,663.25) Cash, 2000 OK CIV APP 102, ¶¶ 7-18, 11 P.3d 1253, 1255-1257; State v. Eleven Thousand Five Hundred Sixty-Six ($11,566.00) Dollars, 1996 OK CIV APP 67, ¶¶ 10-12, 919 P.2d 34, 37-38; State v. $2,200.00 in U.S. Currency, 1993 OK CIV APP 22, ¶¶ 5-6, 851 P.2d 1081, 1082-1083.

III. FORFEITURE PURSUANT TO TITLE 63, SUBSECTION 2-503(A)(7)
¶ 8 A peace officer of this state may seize property subject-to forfeiture under the Act (1) when "[t]he seizure is incident to an arrest or search warrant," (2) when "[t]he property has been the subject of a prior judgment in favor of the state in an injunction or forfeiture proceeding under" the Act, (3) when "[p]robable cause exists to believe" it presents a public health danger, or (4) when "[p]robable cause exists to believe the property has been used, or will be used in violation" of the Act. 63 O.S.2001, § 2-504. For forfeiture of property addressed in title 63, subsection 2-503(A)(7), the party seeking forfeiture must show by a preponderance of the evidence the applicable requirements for seizure. Id. at § 2-506(G). For title 63, subsection 2-503(A)(7), the party seeking forfeiture must produce evidence that the monies were found in close proximity to any amount of forfeitable substance, forfeitable paraphernalia, or forfeitable records. Once the party seeking forfeiture has met this burden of production, a rebuttable presumption arises that the monies are forfeitable under the Act. Id. at § 2-503(A)(7).
¶ 9 The discrepancies in subsection 2-503(A)(7)'s construction arise, at least in part, because it is unclear what makes the monies forfeitable under the Act. In construing a statutory enactment, the goal is to ascertain the Legislature's intent. In re Estate of Villines, 2005 OK 63, ¶ 9, 122 P.3d 466, 470. If the enactment is unambiguous, it is presumed that the Legislature intended what it expressed. Id. When an ambiguity exists, provisions of a legislative act will be construed together to result in a harmonious whole, id. at ¶ 9., and will be given a reasonable and sensible construction which will avoid absurd consequences. State ex rel. *1081 Dept. of Public Safety v. 1985 GMC Pickup, 1995 OK 75, ¶ 7, 898 P.2d 1280, 1282. Further, general words which are associated with specific words may be limited by the specific words when they are capable of an analogous meaning. Oklahoma Tax Comm'n v. Fortinberry Co., 1949 OK 75, ¶ 14, 207 P.2d 301, 305.
¶ 10 Title 63, subsection 2-503(A)(7) operates to create a presumption that monies found in close proximity to any amount of a forfeitable substance are forfeitable. Title 63, subsection 2-503(A)(1) makes a controlled dangerous substance and other items which are possessed in violation of the Act forfeitable. Under these two provisions, possession of any amount of a controlled dangerous substance in violation of the Act unambiguously gives rise to the presumption that the monies found in close proximity to it, in this case marihauna, are forfeitable.
¶ 11 We next turn to the evidentiary proof necessary to rebut the presumption and, if the presumption is rebutted, to support a forfeiture under subsection 2-503(A)(7). Forfeiture under title 63, subsections 2-503(A)(2)-(6), and (8)-(9) is based on manufacturing and distribution of controlled dangerous substances in violation of the Act. These subsections provide for the forfeiture of materials and equipment used to manufacture controlled dangerous substances, conveyances used to distribute them, records used to manufacture and distribute them, proceeds of their sale, and other property and weapons possessed or used to facilitate a violation of the Act. The focus of these subsections is on the forfeitability of instrumentalities of drug trafficking,[2] leading to the conclusion that the Legislature intended that subsections 2-503(A)(2)-(6) and (8)-(9) forfeiture provisions to be based on drug trafficking.
¶ 12 Extending this legislative intent to subsection 2-503(A)(7), evidence that monies found in close proximity to any amount of a controlled dangerous substances possessed in violation of the Act creates a pre-sumption that the monies are the proceeds from the distribution or manufacture of a controlled dangerous substance. Once the presumption arises, the person claiming the monies may rebut the presumption by showing that "the forfeited currency bore no nexus to a violation of the Act," or, in other words, that there is a legal source of the currency. State v. One Thousand Two Hundred Sixty-seven Dollars ($1,267.00), 2006 OK 15, ¶ 30, 131 P.3d 116, 126. Once rebutted, the party seeking forfeiture must produce contrary evidence. See 63 O.S.Supp. 2004, § 2-506(G).
¶ 13 The next step in the resolution of the questions before us is to determine whether a subsection 2-503(A)(7) forfeiture is dependent on an in personam criminal charge or conviction for possession. Forfeiture proceedings under title 63, section 2-503 are in rem and civil in nature. State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck, 1988 OK 38, ¶ 9, 753 P.2d 1356. Civil forfeiture is based on the legal fiction that the object is guilty of the crime. Austin v. United States, 509 U.S. 602, 615-616, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (quoting J.S. Goldsmith, Jr., Grant Co. v. United States, 254 U.S. 505, 511, 41 S.Ct. 189, 65 L.Ed. 376 (1921)). Under the common law, in rem civil forfeiture is "independent of, and wholly unaffected by any criminal proceeding in personam." In re The Palmyra, 25 U.S. (12 Wheat.) 1, 15, 6 L.Ed. 531 (1827). Thus, the common law does not require section 2-503 forfeitures to be based on a criminal charge, such as possession with intent to distribute, or on a criminal conviction.
¶ 14 Likewise, there is nothing in the Act which makes a subsection 2-503(A)(7)'s forfeiture dependent on an in personam criminal charge or conviction. Subsection 2-503(A)(7)'s presumption of forfeitability arises when monies are found in close proximity to any amount of a controlled dangerous substance or other forfeitable items. As the district attorney contends, there is no common-law or statutory rule which limits his discretion to seek forfeiture of an item *1082 based on its nexus to drug trafficking while only seeking to prosecute in personam for simple possession. In fact, he need not file any charges before seeking forfeiture under subsection 2-503(A)(7).
¶ 15 This construction is in keeping with our decisions in 1985 GMC Pickup, 1995 OK 75, 898 P.2d 1280, and in One Thousand Two Hundred Sixty-Seven Dollars, 2006 OK 15, 131 P.3d 116. In 1985 GMC Pickup, after the owner/ occupant of the pickup was convicted of possession of marihuana, the Department of Public Safety sought forfeiture of the pickup. The notice of seizure and forfeiture stated the grounds for forfeiture to be the owner's use of the vehicle while possessing and transporting marihuana under title 63, subsections 2-503(A)(1) and (4). This Court found that simple possession was an insufficient basis for forfeiture under subsection 2-503(A)(4). 1985 GMC Pickup did not require an in personam charge or conviction of possession with intent to distribute but did require evidentiary proof which would support more than simple possession in violation of the Act be produced in the forfeiture proceedings.
¶ 16 In One Thousand Two Hundred Sixty-Seven Dollars, 2006 OK 15, 131 P.3d 116, the State sought the forfeiture of currency based on three grounds, one of which was the close proximity of the currency "to forfeitable substances, to forfeitable drug manufacturing or distribution paraphernalia or to forfeitable records of the importation, manufacture, or distribution of forfeitable substances." Both parties filed motions for summary judgment. The State submitted evidentiary material in the form of a police officer's affidavit that he found baggies containing tan rocks which he suspected of being cocaine and $1,267.00 in cash on the claimant's person when he was arrested and that an analysis of the rocks showed they were 31.85 grams of crack cocaine, more than enough to support a charge of possession with intent to distribute. This Court determined that the State's evidentiary material was sufficient to shift the burden of proof to the claimant. Because the claimant failed to counter the State's evidentiary materials, the trial court had correctly entered judgment for the State. The Court did not require an in personam criminal charge or conviction against the claimant.

IV. 2004 AMENDMENT TO SUBSECTION 2-503(A)(7)
¶ 17 In 2004, the Oklahoma Legislature amended title, 63, subsection 2-503(A)(7). Before the amendment, subsection 2-503(A)(7) provided for forfeiture of "[a]ll monies, coin and currency found in close proximity to forfeitable substances. . . ." After the amendment, it provided for forfeiture of "[a]ll monies, coin and currency found in close proximity to any amount of forfeitable substances. . . ." (Emphasis added.) The district attorney relies on this amendment to support his position that the Legislature intended to allow forfeiture based on simple possession.
¶ 18 The meaning of title 63, subsection 2-503(A)(7) is clear as discussed above. It does appear that the 2004 amendment is a legislative recognition that the only evidence of drug distribution against the seller may be the proceeds from the sale and trace amounts of the drugs and that this evidence would give rise to a presumption that the money is proceeds from drug distribution.

V. EXCESSIVE FINES CLAUSE
¶ 19 The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Excessive Fine Clause of this provision "limits the government's power to extract payments, whether in case or in kind, `as punishment for some offense.'" Austin v. United States, 509 U.S. 602, 609-610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (quoting Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265, 109 S.Ct. 2909). We need not detail the history of forfeiture here because it is presented by Justice O'Connor in her separate writing, concurring in part and dissenting in part, in Browning-Ferris, 492 U.S. at 282-301, 109 S.Ct. 2909 as well as by the Court in Austin, 509 U.S. at 611-619, 113 S.Ct. 2801 and in United States v. Bajakajian, *1083 524 U.S. 321, 331, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).
¶ 20 The United States Supreme Court has addressed forfeiture under the Eight Amendment in two fairly recent cases. Austin, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488; Bajakajian, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314. In Austin, a unanimous decision, the claimant had pled guilty in criminal proceedings to possession with intent to distribute cocaine. 509 U.S. at 604, 113 S.Ct. 2801. The government then filed an in rem civil action seeking forfeiture of his mobile home and his body shop, the places he used for storing and selling the cocaine. Id. at 604-605, 113 S.Ct. 2801. The claimant argued that the forfeitures violated the Excessive Fines Clause. Id. at 605, 113 S.Ct. 2801.
¶ 21 The Austin Court noted that civil forfeitures advanced both punitive as well as remedial goals. Id. at 610, 113 S.Ct. 2801. The Court found it unnecessary "to exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause." Id. at 611, 113 S.Ct. 2801. Under Austin, a forfeiture which is not purely remedial, but which serves in part as punishment, is subject to the limitations of the Excessive Fines Clause. Id. at 610, 622 n. 14, 113 S.Ct. 2801. The Austin Court concluded "that forfeiture generally and statutory in rem forfeiture in particular historically have been understood, at least in part, as punishment." Id. at 618, 113 S.Ct. 2801. The relevant question under Austin, "is not . . . whether forfeiture . . . is civil or criminal, but rather whether it is punishment." Id. at 610, 113 S.Ct. 2801.
¶ 22 The Court considered the following factors in concluding that subsections 881(a)(4) and (a)(7) of title 21 of the United States Code were punitive and, thus, limited by the Excessive Fines Clause: (1) nothing in the subsections or their legislative history contradicts "the historical understanding of forfeiture as punishment," id. at 619, 113 S.Ct. 2801 (2) forfeiture under these subsections is subject to an innocent owner defense, making them look like punishment, id., (3) forfeiture under these subsections is tied directly to the commission of a drug offense, id. at 620, 113 S.Ct. 2801 (4) section 881's legislative history supports a legislative intent that section 881 forfeitures would act as a deterrent, id., and (5) there are "dramatic variations in the value" of forfeitures under the two subsections which have no "`correlation to any damages sustained by society or to the cost of enforcing the law.'" Id. at 621, 113 S.Ct. 2801 (quoting United States v. Ward, 448 U.S. 242, 254, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).
¶ 23 The Court rejected the government's argument that subsections 881(a)(4) and (a)(7) were remedial. Id. at 621, 113 S.Ct. 2801. The government based its argument on two reasons. The first was that the forfeitures protected the community by removing instruments of drug trafficking from society. Id. at 620, 113 S.Ct. 2801. The second was that they served "to compensate the Government for the expense of law enforcement activity and for its expenditure on societal problems such as urban blight, drug addiction, and other health concerns resulting from the drug trade." Id. In rejecting the government's argument, the Court noted that the reasons for forfeiture of contraband, removing dangerous or illegal items from society, did not apply to conveyances because there was nothing criminal in possessing an automobile. Id. at 621, 113 S.Ct. 2801. The Court refused to articulate a test for determining whether a forfeiture exceeded the Excessive Fines Clause's limitations. Id. at 622, 113 S.Ct. 2801.
¶ 24 Austin is distinguishable in that there was no evidence that the mobile home and the business were directly related to the offense of possession with the intent to distribute or were purchased with the proceeds from a drug sale. Here, the allegations are that the $18,235.00 was found in close proximity to marihuana in violation of the Act which would, if proven, raise a presumption that the money is or has been used in a drug transaction. Unlike in Austin, the forfeiture of the $18,235.00 here, if supported by the evidence, disgorges the claimants of proceeds received in violation of the Act. The forfeiture here does not squarely fall under Austin's teachings.
*1084 ¶ 25 Five years after the Austin decision, the Supreme Court decided Bajakajian, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314, in a five to four decision. Bajakajian failed to report to customs officials that he possessed in excess of $10,000.00 when boarding a flight to Italy in violation of title 31, sections 5316(a)(1)(A) and 5322(a) of the United States Code. Id. at 324-325, 118 S.Ct. 2028. In fact, inspectors found Bajakajian was transporting $357,144.00. Id. at 325, 118 S.Ct. 2028. As part of the criminal proceeding, the government sought forfeiture of the $357,144.00 pursuant to title 18, section 982(a)(1) of the United States Code. Id. at 325, 118 S.Ct. 2028. Bajakajian challenged the forfeiture as violating the Excessive Fines Clause. Id. at 324, 118 S.Ct. 2028.
¶ 26 The Bajakajian Court had no problem in finding the forfeiture of the $357,144.00 to be punitive. Id. at 328, 118 S.Ct. 2028. In determining that the forfeiture constituted punishment, the Bajakajian Court considered that the forfeiture was imposed as part of a criminal proceeding, required a felony conviction, and could not be imposed on an innocent owner. Id. at 328, 118 S.Ct. 2028. It noted: "Traditional in rem forfeitures were not considered punishment against the individual for an offense," and "traditionally were considered to occupy a place outside the domain of the Excessive Fines Clause." 524 U.S. at 330-331, 118 S.Ct. 2028.
¶ 27 The Bajakajian Court seems to retreat from Austin's strong language. Where the Austin Court crisply rejected the government's instrumentality argument, the Bajakajian Court, albeit be it in obiter dictum, recognized that "[i]nstrumentalities historically have been treated as a form of `guilty property' that can be forfeited in civil in rem proceedings." 524 U.S. at 333, 118 S.Ct. 2028. The Court concluded that because the forfeitures were not sought in in rem civil proceedings but in in personam criminal proceedings, the question of whether the currency was an instrumentality was irrelevant. Id. at 333-334, 118 S.Ct. 2028. But, it reiterated: "`Instrumentality' forfeitures have historically been limited to the property actually used to commit an offense and no more." Id. at 333 n. 8, 118 S.Ct. 2028 (quoting Austin 509 U.S. at 627-628, 113 S.Ct. 2801 (Scalia, J., concurring in part and concurring in judgment)). The Court continued that a forfeiture which exceeded this limited definition of instrumentality is ipso facto subject to the Excessive Fines Clause's limitations. Id. Under Bajakajian's language, it would appear that forfeiture of the $18,235.00 here would be purely remedial and not subject to the Excessive Fines Clause.[3]
¶ 28 In the time between the decisions in Austin and Bajakajian, the United States Supreme Court decided United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (consolidated with United States v. $405,089.23 in United States Currency, case no. 95-346). In case number 95-346, the defendants were "convicted of conspiracy to aid and abet the manufacture of methamphetamine [and] conspiracy to launder monetary instruments, [along with actual] money laundering." Id. at 271, 116 S.Ct. 2135. The United States sought forfeiture in an in rem civil proceeding under the money laundering forfeiture statutes and under title 21, subsection 881(a)(6) of the United States Code. Subsection 881(a)(6) provided for the forfeiture of "(i) `[a]ll . . . things of value furnished or intended to be furnished by any person in exchange for' illegal drugs, (ii) `all proceeds traceable to such an exchange,' and (iii) `all moneys, negotiable instruments, and securities used or intended to be used to facilitate' a federal drug felony." Id. at 272, 116 S.Ct. 2135. The claimants attacked the *1085 forfeiture as violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.
¶ 29 In Ursery, the Court acknowledged that "[t]o the extent that § 881(a)(6) applies to `proceeds' of illegal drug activity, it serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts." Id. at 291, 116 S.Ct. 2135. Even though Ursery is an attack on forfeiture under the Double Jeopardy Clause, we believe that this statement would be equally applicable to attacks under the Excessive Fines Clause. As Justice Kennedy noted in his concurring opinion in Ursery, the proceeds of illegal drug activity "are the proceeds of unlawful activity. They are not property that respondents have any right to retain. The forfeiture of such proceeds, like the confiscation of money stolen from a bank, does not punish respondents because it exacts no price in liberty or lawfully derived property from them." Id. at 298, 116 S.Ct. 2135.
¶ 30 Under Ursery, because title 63, subsection 2-503(A)(7) disgorges illegally obtained monies from drug distribution, forfeitures under it are purely remedial and not subject to the Excessive Fines Clause under the United States Supreme Court's jurisprudence.[4] Thus, we find that forfeiture under title 63, subsection 2-503(A)(7) is not limited by the Excessive Fines Clause.

VI. CONCLUSION
¶ 31 Here the district attorney alleged that the $18,235.00 was found in close proximity to marihuana possessed in violation of the Act. This allegation is sufficient to avoid a motion to dismiss, because if proven, a rebuttable presumption arises that the $18,235.00 was the proceeds of drug distribution. This presumption may be rebutted with proof that the $18,235.00 bore no nexus to a violation of the Act, and the district attorney may then present contrary evidence.
¶ 32 Because subsection 2-503(A)(7) is an in rem civil proceeding which disgorges illegally derived property, it is purely remedial. Thus, the Excessive Fines Clause's limitations do not apply to such forfeitures. Based on this conclusion, we need not determine whether the $18,235.00 is excessive.
¶ 33 The Court of Civil Appeals' opinion is vacated. The district court's judgment is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA (by separate writing), TAYLOR, JJ., concur.
KAUGER, J., concurs in result.
WATT, COLBERT, REIF (by separate writing), JJ., concur in part; dissent in part.
OPALA, J., concurring.
¶ 1 Although I join in today's pronouncement, I write separately to focus on points that distinguish forfeitures in rem[1] from those in personam.
¶ 2 At the time our nationhood began the English law recognized three kinds of forfeitures. The first of these was forfeiture upon conviction of a felony or treason; the second dealt with deodands;[2] and the third *1086 consisted of statute-based forfeitures.[3] Of the three English-law classes, only forfeitures in statute-based proceedings survive in the United States. Statutory forfeiture proceedings in the United States may be divided into those in rem and in personam. The most notable statutory in rem forfeiture remedy now available is against the means of land transport as well as against commodities used in violation of law. A statutory proceeding to forfeit money seized "in close proximity to any amount of a controlled dangerous substance" is one in rem.[4] It is predicated upon the money's connection with its illegal use. The liability of a res is founded on the fiction introduced early into the English legal system by the law of deodands. The key component of that law was that an inanimate object (or an animal or a slave) may be "guilty of wrongdoing." A legally guilty thing may never be exonerated, either in whole or in part. In rem forfeiture actions are brought solely against things called "instrumentalities"  i.e., against property that is subject to seizure "because it was the actual means by which an offense was committed."[5]
¶ 3 On the other hand, in personam forfeiture is based not on the guilt of instrumentality sought to be forfeited but on human conduct of one who is the defendant in the case. In a proceeding to impose a forfeiture of one's office, the action is pressed not against an inanimate object-the res-but against an office holder who by law is required to forfeit an office upon conviction of a felony.[6] In personam forfeiture remedies must also be invoked when the government seeks to deprive a convicted office-holding felon of benefits that flow from a forfeited office.
¶ 4 In this case there is no doubt that the forfeiture remedy is pressed against the seized money (res) and not against a person. The case is hence prosecuted in rem and not in personam.
REIF, J., with whom WATT and COLBERT, JJ. join, concurring in part; dissenting in part.
¶ 1 This Court granted certiorari to review an opinion of the Court of Civil Appeals that interpreted 63 O.S. Supp. 2007 § 2-503(A)(7). This statute authorizes forfeiture of money found in close proximity to any amount of forfeitable substances. The Court of Civil Appeals interpreted § 2-503(A)(7) in affirming the dismissal of a proceeding in the district court of Bryan County, seeking forfeiture of money seized from Shawn Gandy.
¶ 2 The controversy both in the district court and on appeal was whether $18,235.00 found on the person and in the car of Shawn Gandy could be forfeited under § 2-503(A)(7), when the amount of marijuana found in the vehicle only gave rise to a charge of simple possession. The district attorney for Bryan County has argued that the language "any amount of forfeitable substances" indicates legislative intent that the money in this case is forfeitable, irrespective of the criminal charge. The Court of Civil Appeals rejected this literal interpretation and held that 63 O.S. Supp. 2007 § 2-503(A)(7) authorized forfeiture only if the money is found in close proximity to any *1087 amount of forfeitable substances possessed in connection with the manufacturing, importation or distribution of controlled substances. The Court of Civil Appeals concluded that the general authorization to forfeit money was limited by its association with further specific authorizations to forfeit paraphernalia and records pertaining to manufacturing, importation and distribution.
¶ 3 On certiorari, a majority of this Court has recognized that "it is unclear what makes monies forfeitable under the Act." In resolving this uncertainty, the majority basically concludes it does not matter whether the amount of forfeitable substances (1) only supports a simple possession charge, or (2) is possessed in connection with manufacturing, importation or distribution; the majority holds that proof that money is found in close proximity to any amount of forfeitable substances is simply the predicate for a rebuttable presumption that "the monies are the proceeds from the distribution or manufacture of controlled dangerous substances." While I agree that § 2-503(A)(7) provides the rebuttable presumption noted by the majority, I believe this presumption is constitutionally infirm.
¶ 4 This Court has held that the law abhors forfeitures, and statutes authorizing forfeiture of private property are to be strictly construed. State ex rel. Dept. Of Public Safety v. 1985 GMC Pickup, 1995 OK 75, ¶ 8, 898 P.2d 1280, 1282. This Court has also held that "the historical basis for forfeiture of private property, [is] that the property itself is `guilty' of the offense and the `forfeiture serves, at least in part, to punish the owner' for allowing his property to be used to commit the offense." Id. at ¶ 12, 898 P.2d at 1283 (citation omitted).
¶ 5 Under the majority interpretation of § 2-503(A)(7), money found in close proximity to forfeitable substances is potentially "guilty" of the offense of being proceeds of drug trafficking, and § 2-503(A)(7) facilitates proof of such "guilt" by means of rebuttable presumption. In my opinion, creating a "presumption of guilt" to implement a penal statutory scheme is a patent violation of due process.
¶ 6 Oklahoma law has long recognized that due process of law imposes a constitutional limit on the power of the legislature "to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated." Payne v. State, 1967 OK CR 194, ¶ 19, 435 P.2d 424, 427 (citation omitted). The rationale for this due process limitation applies equally to a presumption of the predicate "guilt" of property to support forfeiture, as it does to a presumption of the guilt of an accused to support the imposition of punishment.
¶ 7 Citing U.S. v. Romano, 382 U.S. 136, 86 S.Ct. 279 (1965), the court in Payne noted that "[s]uch a legislative determination [i.e., a presumption of guilt] would not be sustained if there was `no rational connection between the fact proved and the ultimate fact presumed.'" Payne, 1967 OK CR 194, ¶ 19, 435 P.2d at 427. The court also noted that a statutory presumption would be constitutionally infirm if the inference of the ultimate fact from proof of the statutory predicate fact is "arbitrary because of lack of connection between the two in common experience." Id.
¶ 8 The court further noted that "where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create [the presumption] as a rule governing the procedure of courts." Id. (citation omitted). The court in Payne pointed out that Romano reversed the conviction of an individual for possessing a still that resulted from "federal statutes authorizing an inference of guilt from defendant's unexplained presence at the site of the still." Payne, 1967 OK CR 194, ¶ 17, 435 P.2d at 427 (emphasis added).
¶ 9 "Common experience" and "the circumstances of life as we know them" teach that almost every adult person carries money on his or her person to supply a variety of needs and wants that are perfectly legal. "Common experience" and "the circumstances of life as we know them" also teach that some persons (particularly those without bank accounts) routinely carry large amounts of money for a variety of reasons that are perfectly legal. There is simply nothing illegal *1088 about having a large amount of money. The fact that a person possesses a large amount of money "in close proximity" to a small amount of drugs found among other possessions does not invariably lead to the conclusion that the money has some "offending" connection to the drugs, any more than a person's unexplained presence at a still will support an inference that the person possesses the still.
¶ 10 A similar conclusion was reached by the Court of Civil Appeals in the case of State of Oklahoma v. One (1) Stevens 12 GA. Shotgun, 2003 OK CIV APP 102, 82 P.3d 110. This case reversed the forfeiture of several firearms found in the residence where a small amount of marijuana was also found, in addition to cultivated marijuana on the property. The Court of Civil Appeals observed that "[t]he establishment of some link or nexus [beyond mere presence] is particularly important in cases involving a residence where people commonly keep all of their possessions (both legal and illegal) to which they want ready access." Id. at ¶ 7, 82 P.3d at 112. The court stressed that "[i]f mere presence with drugs and a dangerous capability to protect the drugs were alone sufficient to support forfeiture, a child's baseball bat, kitchen knives, ordinary scissors, sharp tools, and even the family dog who displays aggressiveness toward strangers would all be subject to forfeiture . . . if found in the same room as drugs." Id.
¶ 11 In other words, the close proximity and presence of things of value and illegal drugs signifies nothing more than an owner's decision to keep his possessions at hand, whether in a residence or in a motor vehicle. Close proximity and mere presence certainly do not disclose anything about the source of items found with drugs.
¶ 12 As the Court of Civil Appeals noted, requiring the State to establish a nexus for forfeiture is necessary "to guarantee that the government is seizing actual instruments of the illegal drug trade" and not property which has only an incidental or fortuitous connection to unlawful activity. Id. at ¶ 6, 82 P.3d at 112 (citation omitted). It is "unreasonable . . . for a court to order the forfeiture of property which has only an incidental or fortuitous connection to the unlawful activity." Id. at ¶ 5, 82 P.3d at 112 (citation omitted).
¶ 13 The fact that a claimant of the money is given the opportunity to rebut the presumption of guilt provided by § 2-503(A)(7) begs the question of whether such a presumption is valid at all. As the Court of Civil Appeals has observed in construing a related forfeiture provision, "[t]he burden [is] upon the State to show some nexus between the currency and a violation of the Act, not upon [a] claimant to explain how he obtained it." State ex rel Means v. $1,354,450.50, 1992 OK CIV APP 56, ¶ 6, 841 P.2d 616, 618.
¶ 14 The judgment of the district court underlying the appeal and certiorari review in this case, purports to "sustain" claimant Gandy's "motion to dismiss." However, this was not a true motion to dismiss. Claimant Gandy's motion presented a statement of conceded facts which the district attorney did not contest and, in fact, relied upon in making his legal argument in support of forfeiture. No evidence beyond the conceded facts was received, because the parties agreed that "the issue is one of law" and "presented [the issues] to the court on briefs of counsel." Rather than ruling on a true motion to dismiss, the trial court, in effect, granted summary judgment.
¶ 15 Given this posture, this Court can properly consider the validity of the presumption without a predicate determination by the trial court. The validity of the presumption is a pure question of law that this Court will decide de novo, with or without the trial court's consideration of the issue.
¶ 16 More importantly, the issue is a public law issue and this Court is free to grant corrective relief upon any applicable legal theory tendered by the record brought for review. Russell v. Board of County Commissioners, Carter County, 1997 OK 80, ¶ 10, 952 P.2d 492, 497. In my opinion, the adverse public impact of such a patently invalid presumption requires this Court to address the issue at this juncture, not only to protect the citizens of this state, but to give much needed clarification and guidance to those who enforce the law.
*1089 ¶ 17 In my opinion, it is particularly onerous to create a presumption of guilt to aid in the forfeiture of something as common as money, in light of the fact that the State need only prove grounds for forfeiture by a preponderance of the evidence. 63 O.S. Supp. 2007 § 2-506(G). If the State cannot show that the money it seeks to forfeit constitutes proceeds of drug trafficking by a preponderance of the evidence, then the public interest is better served by return of the money and not by elevating speculation and suspicion to the status of a presumption.
¶ 18 In reaching this conclusion I wish to stress that the legislature may validly authorize the forfeiture of money found in close proximity to any amount of forfeitable substances upon proof of that the money constitutes proceeds of drug trafficking. What the Legislature cannot do is presume the money constitutes proceeds of drug trafficking or is being used to further drug trafficking based on the mere fact of presence and proximity. Stated another way, the constitutional infirmity in 63 O.S. Supp. 2007 § 2-503(A)(7) is not what the Legislature seeks to accomplish in the public interest, but instead lies in the singular means of the presumption of guilt it provided to accomplish the end. The State may continue to pursue forfeiture of money under § 2-503(A)(7) and can prevail in such forfeitures upon meeting its burden of proof. It cannot, however, utilize the shortcut of the presumption set forth in § 2-503(A)(7).
¶ 19 Notwithstanding my dissent concerning the presumption, I join the majority in vacating the Court of Civil Appeals' opinion, reversing the district court's dismissal of the forfeiture proceeding and remanding for further proceedings for the State to prove the money seized from Shawn Gandy constituted proceeds from drug trafficking. However, I would instruct the trial court to require the State to meet its burden of proof without the aid of the presumption set forth in § 2-503(A)(7).
¶ 20 I also join the majority determination that forfeiture of the money in question would not constitute an excessive fine, regardless of any criminal charge, in the event the State can prove by a preponderance of the evidence that the money is the proceeds of drug trafficking. Even though forfeiture procedure has penal purposes and constitutional limitations, a judgment forfeiting money from one who has obtained it from violation of the law serves the equitable end of disgorging the wrongdoer of ill-gotten gains. The excessive fines provision of the Eight Amendment is not implicated in such cases.
NOTES
[1] The Uniform Controlled Dangerous Substances Act uses the spelling "marihuana." 63 O.S.2001, § 2-204(C)(12). In the pleadings, the district attorney's office uses the alternate spelling "marijuana." Petition to Forfeit Property Seized During Arrest For Controlled Dangerous Substance, Tab 2, Record on Accelerated Appeal. Both spellings, as well as "mariguana," denote the same substances. Black's Law Dictionary 871 (5th ed. 1979).
[2] Subsection 2-503(C) provides for forfeiture of a person's property if the person fails to pay a fine imposed for violations of the Act.
[3] We observe the Bajakajian Court reached the question of when a criminal forfeiture exceeded the Excessive Fines Clause's limitations and adopted the standard that a punitive forfeiture is constitutionally excessive if it is grossly disproportional to the gravity of the offense. Id. at 334, 118 S.Ct. 2028. In applying the grossly disproportional test, a court must first "compare the amount of the forfeiture to the gravity of the defendant's offense." Id. at 336-337, 118 S.Ct. 2028. It is unclear whether the test is applicable in in rem civil proceedings since the proceeding in Bajakajian involved an in personam criminal proceeding, and at least one court found it necessary to supplement Bajakajian's considerations in in rem civil forfeitures. U.S. v. Wagoner County Real Estate, 278 F.3d 1091, 1100-1101 (10th Cir.2002). We need not reach this question in the case before us.
[4] This Court addressed this issue in 1985 GMC Pickup, stating: "The primary holding of Austin is forfeiture is penal in nature, and therefore, the `excessive fines' clause of the Eighth Amendment to the U.S. Constitution applies to any forfeiture under statutes such as the one at issue in the case at bar." 1995 OK 75 at ¶ 13, 898 P.2d at 1283. 1985 GMC Pickup addressed to the forfeiture of conveyances.
[1] The term "in rem" is Latin for "against a thing." An in rem proceeding determines the status of a thing and the rights of persons associated with respect to that thing. Black's Law Dictionary 797 (7th ed.1999).
[2] The ancient law of deodands is founded on the fiction that an inanimate object (or an animal or slave) may be guilty of wrongdoing. The term "deodand" derives from the Latin Deo dandum (a thing to be given to God). Black's Law Dictionary 392 (5th ed.1979). The value of an inanimate object (or an animal or slave) causing the death of the King's subject was forfeitable to the Crown. The forfeited object-the "deodand"  was originally used to provide funds for religious masses for the dead. That use of the proceeds later changed from solely religious to charitable purposes. When the latter purpose ceased, the deodand became a source of revenue for the Crown, and the Crown's retention of the monies was justified as a penalty for carelessness. Austin v. United States, 509 U.S. 602, 611, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993) (citing Holmes, The Common Law, c. 1, supra note 30, and 1 William Blackstone Commentaries *300, 301). For an extended discussion of the three types of forfeiture in existence in England during the late 18th century, see Austin, supra, 509 U.S. at 611-16, 113 S.Ct. at 2806-09; Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-85, 94 S.Ct. 2080, 2090-92, 40 L.Ed.2d 452 (1974). See also State v. Bisaccia, 45 N.J. 504, 213 A.2d 185, 187 (1965).
[3] State v. One 1965 Red Chevrolet Pickup, 2001 OK 82, 37 P.3d 815; Duncan v. Oklahoma Department of Corrections, 2004 OK 58, 95 P.3d 1076, 1086 (Opala, J., dissenting).
[4] 63 O.S.2001 § 2-503(A)(7).
[5] U.S. v. Bajakajian, 524 U.S. 321, 334, 118 S.Ct. 2028, 2036, 141 L.Ed.2d 314 (1998), where it was said in footnote 8 that although the term "instrumentality" is of recent vintage, it fairly characterizes property that historically was subject to forfeiture because it was the actual means by which an offense was committed. Instrumentality forfeitures have historically been limited to the property actually used to commit an offense and no more.
[6] See Hendrick v. Walters, 1993 OK 162, 865 P.2d 1232.