2010 OK 19

**STATE of Oklahoma ex rel. Emily REDMAN, District Attorney, Plaintiff/Appellee,**

v.

**$122.44; Digital Scales; Cabela's Safe SN 2020515; Remington 12 GA Shotgun SN N976879V; Sears and Roebuck Model 20–12 GA Shotgun SN Unknown; Mossberg 12 GA Shotgun SN MV20207K; New Haven Mossberg 22 Mag SN 1126464; JC Higgins Sears and Roebuck Model 583.1 12 GA Shotgun SN Unknown; Winchester Model 67 22 Rifle**

SN Unknown; Ruger 12–22 Rifle SN 29010763; Browning Belgian Made 22 Rifle SN 3174459; Rossi 17 HMR Cal SN AC015402; Romanian 762X39 SN 1412992003; Ruger 10–22 SN 23496522; Ruger Mini 14 SN 18050780; Interarms 44 Mag SN M035407; Winchester 30–30 SN USA 19236; Cricket 22 CAL SN 131451; Smith and Wesson 50 Cal Pistol SN CJDO940; Colt 22 CAL Pistol SN PH41279; 2 Holsters 7 Gun Magazines; 2 Knives; 7 Pocket Knives; 1 Bushnell Scope; AR 15 Carry Handle; Sling; and Straight Razor, Defendants,

and

Joseph Harrell, Jr., Respondent/Appellant.

No. 106292.

Supreme Court of Oklahoma.

March 2, 2010.

Emily Redman, District Attorney, Julie Cuesta–Naifeh, Assistant District Attorney, Durant, OK, for Defendant/Appellee.

D. Michael Haggerty, II, Haggerty Law Office, PLLC, Durant, OK, for Plaintiff/Appellant.

REIF, J.:

¶ 1 The issue presented on certiorari review is whether the trial court and the Court of Civil Appeals correctly forfeited weapons that were kept in the same residence where marijuana was found that, in turn, led to a conviction of the owner for possession of marijuana with intent to distribute. Upon certiorari review, we hold that the trial court and the Court of Civil Appeals erred in the forfeiture of the weapons in question and reverse.

¶ 2 Following the service of a search warrant at his home, Joe Harrell, Jr., was convicted of possessing some 22 ounces of packaged marijuana with intent to distribute. In addition to the marijuana that was found in the master bedroom and the kitchen, the officer executing the search warrant seized a gun safe (and its contents) located in the living room. The safe contained: (1) 17 firearms, including rifles, shotguns, and hand guns; (2) accessories, such as holsters, gun magazines, a scope, a carry handle and a sling; (3) miscellaneous ammunition; (4) two knives; (5) seven pocket knives; (6) a straight razor; (7) $22.01 in bills and coin; (8) a document addressed to Mr. Harrell's mother; and (9) .09 grams of marijuana residue from cracks along the floor piece of the safe.

¶ 3 The State sought to forfeit the safe and its contents. Although pleading three statutory grounds for forfeiture, the State ultimately argued for forfeiture of the safe and its contents based on 63 O.S. Supp.2008 § 2–503(A)(9) alone. This statutory provision authorizes forfeiture of "[w]eapons ... available for use in any manner to facilitate a violation of the Uniform Controlled Dangerous Substances Act." To prove this ground, the State relied upon the opinions of the officer that (1) the safe was being used to store marijuana, and (2) "if you're selling marijuana and you're getting it out of a safe, there are weapons there [that] could be, you know, intimidating [to] make sure you don't get ripped off."

¶ 4 Specially noting that "marijuana residue [was] found locked in the safe with the referenced weapons," the trial court concluded Mr. Harrell's "purpose in having the [safe and its various weapons] was in furtherance of his illegal drug enterprise." The trial court ruled "the safe and all weapons in the safe [were] 'available for use in any manner to facilitate a violation of the Uniform Controlled Dangerous Substances Act' as contemplated in 63 § 2–503(A)(9)." The court ordered the safe and its contents forfeited.

¶ 5 By a majority opinion, the Court of Civil Appeals affirmed the forfeiture of the weapons, but reversed the forfeiture of the safe itself. The majority opinion noted that the statutory ground relied on by the State and the trial court only authorized forfeiture of "weapons." The majority opinion observed that "the plain meaning of the term would not reasonably include a safe, even if the safe is used to store "weapons."

¶ 6 As for the contents of the safe, however, the majority opinion concluded the contents were weapons that facilitated Mr. Harrell's possession of marijuana with intent to distribute. The majority opinion explained "the guns inside the safe, easily accessible and in close proximity to the marijuana, could be used for intimidation purposes in the sale thereof." The dissent registered disagreement with this conclusion by noting "the location of the safe and its contents in the living room [was] a location which was out of the sight of drugs." It appears the dissent was referring to the fact that the packaged marijuana was found in the closet of the master bedroom (some fifteen feet away from the living room) and in a cabinet in the kitchen.

¶ 7 In reaching their respective conclusions that the weapons in the safe were subject to forfeiture, both the trial court and the Court of Civil Appeals followed the interpretation of 63 O.S. Supp.2008 § 2–503(A)(9), set forth in *State of Oklahoma ex rel. Oklahoma Bureau of Narcotics and Dangerous Drugs Control v. One (1) Stevens 12 Ga. Shotgun,* 2003 OK CIV APP 102, 82 P.3d 110. However, both the trial court and the Court of Civil

Appeals believed a difference between the facts in the case at hand and the facts in the *Stevens 12 Ga. Shotgun* case dictated a different result than reached by the court therein. Our review of the *Stevens 12 Ga. Shotgun* case, leads us to conclude that it correctly interprets § 2–503(A)(9). We also conclude the facilitation requirement set forth therein dictates the same result in the case at hand as the court reached in the *Stevens 12 Ga. Shotgun* case, despite some factual differences.[1]

■ ¶ 8 In particular, we agree that the State must demonstrate that the connection between the property sought in forfeiture and the underlying offense is more than incidental or fortuitous. *Id.* at ¶ 6, 82 P.3d at 112.[2] The State must do so in order to guarantee that the State is seizing *actual* instruments of the illegal drug trade. *Id.* It would be unreasonable for a court to order forfeiture of property which has only an incidental or fortuitous connection to unlawful activity. *Id.* at ¶ 5, 82 P.3d at 112.

■ ¶ 9 The establishment of some link or nexus is particularly important in cases involving a residence where people commonly keep all of their possessions (both legal and illegal) to which they want ready access. *Id.* at ¶ 7, 82 P.3d at 112. Mere presence of an item with drugs and a dangerous capability of the item to protect the drugs are not alone sufficient to establish the nexus necessary for forfeiture. *Id.* To forfeit under 63 O.S. Supp. 2008 § 2–503(A)(9), the State must demonstrate that the "weapon" has somehow "facilitated" the offense or offenses that serve as

1. Both the trial court and Court of Civil Appeals felt the *Stevens 12 Ga. Shotgun* case turned on the fact that the marijuana in that case was being cultivated *outside* the residence where the guns were kept. However, this was not a determinative fact. Forfeiture of the guns in the *Stevens 12 Ga. Shotgun* case was denied because the State failed to show how they facilitated *the offense* of cultivating marijuana.

2. In comparing federal forfeiture statutes, the Indiana Supreme Court has determined that the government must demonstrate that the nexus between the property sought in forfeiture and the

underlying offense is more than incidental or fortuitous. *Katner v. State,* 655 N.E.2d 345, 348–49 (Ind.1995) (citing *U.S. v. Real Estate Known as 916 Douglas Avenue,* 903 F.2d 490, 494 (7th Cir.1990)). The Indiana Court observed that "[t]his nexus requirement is a means to guarantee that the government is seizing *actual* instruments of the illegal drug trade. The language of *the statute is directed toward instruments of this illicit activity,* in hopes of retarding, through asset forfeiture, expanding drug commerce." *Id.* at 349 (emphasis added).

the basis of its forfeiture.[3] *State of Oklahoma, ex rel. Oklahoma Bureau of Narcotics and Dangerous Drugs Control v. Stevens 12 Ga. Shotgun,* 2003 OK CIV APP 102, ¶ 8, 82 P.3d at 112.

■ ¶ 10 In the *Stevens 12 Ga. Shotgun* case, the State sought to prove the facilitation nexus by the opinion testimony of a narcotics agent with considerable training and experience. This agent testified that marijuana cultivators will have numerous weapons around their residence to protect their crop. Without more, this opinion testimony was found to be insufficient. *Id.* at ¶ 12, 82 P.3d at 113. The opinion testimony of the officer in the case at hand (that the weapons in the safe "could be" used for intimidation to make sure Mr. Harrell did not "get ripped off") is not substantially different than the opinion testimony in *Stevens 12 Ga. Shotgun,* and is similarly insufficient to show that the weapons facilitated Mr. Harrell's possession of marijuana with intent to distribute.

¶ 11 Like the court in the *Stevens 12 Ga. Shotgun* case, we deem it necessary for the State to show some additional fact or circumstance, along with such generalized opinions, to support a facilitation nexus. *Id.* at ¶ 13, 82 P.3d at 113. Examples of such additional facts or circumstances include a statement by a drug offender that he would use weapons to protect his drugs and drug activity, testimony that a drug offender was observed being armed while engaged in the drug activity, or even that a firearm or weapon was found on the offender's person when arrested for a drug offense. *Id.*

¶ 12 Not only did the State fail to establish the basis for an inference that the weapons in the safe "facilitated" Mr. Harrell's possession on marijuana with intent to distribute, the opinion testimony of the officer as well as the conclusions of the trial court and the Court of Civil Appeals, were all based on the erroneous assumption that Mr. Harrell *sold* marijuana at his residence.[4] There is no evidence in the record that Mr. Harrell ever sold or otherwise transferred marijuana to anyone at his residence. Obviously, for the weapons in the safe to have an intimidation effect, there must be evidence that someone was obtaining marijuana at the residence who could be exposed to and intimidated by the weapons in the safe.

¶ 13 Finally, even the marijuana residue found in the safe with the weapons does not support an inference that the weapons in the safe "facilitated" Mr. Harrell's possession of marijuana with intent to distribute. The officer's testimony that the marijuana residue in the safe indicated to him that marijuana had been stored there reflects a reasonable de-

---

3. The court in the *Stevens 12 Ga. Shotgun* case looked to the interpretation of a federal forfeiture statute by *Platt v. United States,* 163 F.2d 165 (10th Cir.1947). *Platt* involved the forfeiture of an automobile that a drug addict drove to a drugstore to obtain drugs by a forged prescription. It noted that "[t]he forfeiture statute in *Platt* provided for forfeiture of any vehicle that was used 'to facilitate the ... receipt, possession [or] purchase ... of any contraband article.' *Id.* at 166. The [*Platt*] court noted that '[t]he word 'facilitate' is one of common use in business and transactions between ordinary persons [and] is a term of everyday use, with a well understood and accepted meaning.' *Id.* The [*Platt*] court cited standard dictionary sources, one of which defined 'facilitate' as meaning: 'To make easy or less difficult; to free from difficulty or impediment; as to facilitate the execution of a task. (2) To lessen the labor of; to assist; ....' *Id.* at 166–67." *State of Oklahoma, ex rel. Oklahoma Bureau of Narcotics and Dangerous Drugs Control v. Stevens 12 Ga. Shotgun,* 2003 OK CIV APP 102, ¶ 9, 82 P.3d at 112–13. The *Platt* court concluded that to be subject to forfeiture, the "facilitate" requirement would be satisfied only if the automobile was used to assist in the commission of the crime. *Platt,* 163 F.2d at 167.

4. Both the officer and the courts may have been justified to infer that Mr. Harrell was selling marijuana at his residence if a large amount of money had been found at the residence. However, the undisputed testimony shows that a total of $122.44 was found at the residence. This included (1) $34.16 in miscellaneous change from a bucket on the dresser in the master bedroom, (2) $12.00 in bills and $11.01 in coins found in the safe, and (3) $65.27 found in another bedroom in which no marijuana was recovered. While it is true that Mr. Harrell did not contest the forfeiture of this money at the forfeiture hearing, such action on his part is not evidence that he sold marijuana at his residence.

duction. However, on cross examination, the officer conceded that the residue could have easily come from someone using marijuana for personal use. There was clear evidence marijuana had been smoked in the living room where the safe was located. Ultimately, the officer admitted he could not say how the residue got there.

¶ 14 The most that can be said about the residue in the safe is that it was deposited at some unknown time by some unknown means prior to the officer opening the safe. Other than being present in the safe with the other contents at the time the officer opened it, there is nothing to show that the contents of the safe were related to the residue or vice versa. Stated another way, there is no more reason to believe the guns facilitated the presence of the residue than there is to believe that the knives facilitated the presence of the money. In a few words, the relationship between the various contents of the safe with each other and the residue is simply incidental or fortuitous.

¶ 15 Resolution of the issue in this case required the interpretation and application of a statute—§ 2–503(A)(9)—to undisputed facts and thus presented questions of law for de novo determination by this Court. *Pan v. Bane*, 2006 OK 57, ¶ 5, 141 P.3d 555, 558. In doing so we approve and adopt the interpretation of § 2–503(A)(9) set forth in the *Stevens 12 Ga. Shotgun* case, and hold that the undisputed evidence presented in support of forfeiture was insufficient to show the weapons kept in the residence facilitated the owner's offense of possessing marijuana with intent to distribute based on the factors discussed in the *Stevens 12 Ga. Shotgun* case.

¶ 16 In reaching this conclusion, we are reminded that the law abhors forfeitures and statutes authorizing forfeiture of private property are to be strictly construed. *State ex rel. Dept. of Public Safety v. 1985 GMC Pickup*, 1995 OK 75, ¶ 8, 898 P.2d 1280, 1282.

A forfeiture will not be allowed except when required by clear statutory language. *Id.* The weapons in question were not subject to forfeiture under the clear statutory language of § 2–503(A)(9). Accordingly, it was error to order forfeiture of the weapons in question and for the Court of Civil Appeals to affirm that order. The Court of Civil Appeals' opinion is vacated, the trial court's forfeiture order is reversed, and this case is remanded to the trial court to return the safe and its contents [5] to Joe Harrell, Jr.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT'S FORFEITURE ORDER REVERSED AND REMANDED WITH INSTRUCTIONS.**

¶ 17 EDMONDSON, C.J., HARGRAVE, OPALA, WATT, WINCHESTER, COLBERT, and REIF, JJ., concur.

¶ 18 TAYLOR, V.C.J., with whom KAUGER, J., joins, dissenting.

TAYLOR, V.C.J., with whom KAUGER, J., joins, dissenting.

I respectfully dissent. The trial judge and the Court of Civil Appeals were correct in their disposition of this issue. This was a drug house. There were packaged drugs, digital scales and extra baggies. There were guns and drug residue in the safe. The guns and the drugs are conveniently 15 feet apart. The guns are clearly helpful in facilitating the crime of possession of illegal drugs with intent to distribute. This is an uncomfortable picture for the drug dealer, but it is a clear picture for legal analysis.

---

5. Mr. Harrell did not contest forfeiture of the $23.01 found in the safe. Accordingly, it is excluded from the direction to return the contents of the safe.